Filed 5/21/14  Unmodified opinion attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re CHRISTOPHER R. et al., Persons Coming Under the Juvenile Court Law. | B250806 |
| | (Los Angeles County Super. Ct. No. CK99150) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ORDER MODIFYING OPINION (No Change in Judgment) |
| Plaintiff and Respondent, | |
| v. | |
| CRYSTAL R. et al., | |
| Defendants and Appellants. | |

THE COURT:

It is ordered that the opinion filed herein on April 14, 2014 and ordered published on April 28, 2014 be modified as follows:

In the first sentence of footnote 6, on pages 9 to 10, delete the word "abuse" and insert "use" between the "substance" and "disorders" so that the footnote reads:

> Not only are we not bound by Division Three's adoption of the DSM-IV-TR's definition of "substance abuse" but also that definition has been replaced in the more recent Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), published in May 2013 after the decision in *Drake M*, by a more broadly defined classification of "substance use disorders," which combines substance abuse and dependence. DSM-5 identifies 11 relevant criteria, including cravings and urges to use the substance; spending a lot of time getting, using or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use; and not managing to do what one should at work, home or school because of substance use. The presence of two or three of the 11 specified criteria indicates a mild substance use disorder; four or five indicate a moderate substance use disorder; and six or more a severe substance use

disorder.  (American Psychiatric Association, Highlights of Changes from DSM-IV-TR to DSM-5 <http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf>as of April 14, 2014.)

There is no change in the judgment.

_____
   PERLUSS, P. J.   WOODS, J.   ZELON, J.

Filed 4/14/14; pub. order 4/28/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re CHRISTOPHER R. et al., Persons Coming Under the Juvenile Court Law. | B250806<br><br>(Los Angeles County Super. Ct. No. CK99150) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CRYSTAL R. et al.,<br><br>    Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Juvenile Court Referee. Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant, Crystal R.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant, Frank G.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

Crystal R., the mother of seven-year-old Christopher R., six-year-old Natalie M., three-year-old Francisco M., and infant Brianna G., and Frank G., the presumed father of Brianna, appeal from the jurisdiction findings and disposition orders declaring the children dependents of the juvenile court after the court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] alleging that Crystal had a seven-year history of substance abuse and was a current abuser of cocaine rendering her unable to provide regular care and supervision of her four children and that Frank had a history of illicit drug abuse and was a current abuser of marijuana rendering him unable to provide regular care and supervision of Brianna. Crystal does not seriously challenge the findings and order as to Brianna, who tested positive for cocaine, amphetamine and methamphetamine at birth, but argues the evidence was insufficient to establish jurisdiction over her other children or to remove them from her custody. Frank, who is the father only of Brianna,[2] likewise does not challenge the court's findings with respect to Crystal and Brianna, but contends the evidence of his past marijuana use and criminal history is insufficient to show he is unable to provide regular care for his child. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Los Angeles County Department of Children and Family Services (Department) received a child abuse referral after both Crystal and Brianna tested positive for cocaine at Brianna's birth. Brianna also tested positive for amphetamine and methamphetamine. Crystal admitted she had started using cocaine when she was 16 years old (seven years before the filing of the dependency petition in this case) but

---

[1]    Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    Crystal identified Frank M. as the father of Francisco and Natalie and reported he was living in Mexico and, as of their detention in April 2013, had not seen them in two years. She said she had no address or telephone number for Frank M. Crystal, who was 17 years old when Christopher was born, told the social worker she did not know who Christopher's father was and could not give her any possible names.

2

insisted she had stopped when she was 17 and had not used the drug since that time. She denied using cocaine during her pregnancy and could not explain how she and Brianna had tested positive. Subsequently Crystal claimed she had picked up a small container of cocaine for someone else during her eighth month of pregnancy and had tasted it to be sure it was cocaine. Brianna was born three days later, approximately one month before Crystal's due date.

Brianna weighed five pounds one ounce when born and, because of respiratory issues, had to be fed intravenously and was on oxygen. She remained in the hospital for 25 days but did not have any withdrawal symptoms and no ongoing health issues.

At the time of the child abuse report Crystal, Christopher (then six years old) and Francisco (then two years old) were living with a cousin, Estella, and Estella's family in Bellflower. Crystal, however, did not know Estella's address or telephone number. Natalie (then five years old) was living with a maternal great aunt in Las Vegas. All three children appeared healthy and had no marks, bruises or other visible signs of abuse.

Estella watched the two boys when Crystal went out—sometimes returning the same day; sometimes not until the following day. Crystal did not let Estella know where she was going when she left the children in her care. Estella told the Department's social worker she had no knowledge whether Crystal had a drug problem but confirmed that Frank, also a relative of hers, smoked marijuana.

Crystal and Frank had had an "off and on" relationship for 18 months to two years. Frank said he and Crystal had been separated for approximately six months; he was not with her when she was pregnant and did not know what she was doing. Apparently when not with Crystal, Frank lived with his father (Brianna's paternal grandfather).

Frank said he was unaware that Crystal used drugs and denied that they had used cocaine or smoked marijuana together. However, Frank acknowledged he had smoked marijuana since he was 14 or 15 years old and his use had increased over time to once or twice each day. He explained he had been shot in the back and smoking marijuana relaxed him. (Frank had unsuccessfully attempted to obtain a medical marijuana card.)

3

However, Frank said he had completely stopped two weeks prior to Brianna's birth because he was going to have a baby soon. Notwithstanding that explanation, Frank was unsure if he was Brianna's father and asked for a paternity test. Frank also told the social worker he was a former gang member and was on probation for vandalism (actually, post-release community supervision, a form of parole supervised by the probation department). According to his probation officer, Frank was not in full compliance with the terms of his release: He had enrolled in a substance abuse program, but not completed it, and had tested positive for marijuana but no other drugs.

While Brianna remained in the hospital and Natalie was in Las Vegas, the Department detained the other two children and filed a dependency petition on behalf of all four of them on April 24, 2013. The juvenile court found a prima facie case had been established the children were described by section 300, subdivision (b) (inability of parent to provide regular care for the child due to substance abuse), and ordered them detained.

At the July 17, 2013 jurisdiction and disposition hearing the court sustained the petition, amended slightly by interlineation, and found the children were described by section 300, subdivision (b). As sustained, count b-1 provides, "[Crystal] has a seven year history of substance abuse, and is a current abuser of cocaine, which renders the mother unable to provide regular care and supervision of the child. The mother used illicit drugs, during the mother's pregnancy with [Brianna], and had a positive toxicology screen for cocaine . . . at the child's birth. The mother's substance abuse endangers the [children's] physical health and safety, creates a detrimental home environment, and places the children at risk of physical harm and danger." As sustained, count b-2 provides, "[Frank] has a history of illicit drug abuse, and is a current abuser of marijuana, which renders the father unable to provide regular care and supervision of the child. The father's abuse of illicit drugs endangers the child's physical health and safety, and places the child at risk of physical harm and danger."

4

Proceeding to disposition, the court found by clear and convincing evidence that a substantial danger existed to the children and there were no reasonable means to protect them without removing them from their parents' custody. The court ordered the children committed to the care, custody and control of the Department for suitable placement and directed the Department to provide reunification services to all four children and Crystal and to Brianna and Frank. Services for the parents were to include substance abuse treatment and drug testing, parenting classes, individual counseling and monitored visitation.

Both Crystal and Frank filed timely notices of appeal from the jurisdiction findings and disposition orders.

## CONTENTS

Essentially conceding dependency jurisdiction was proper as to Brianna, who was born with a positive toxicology screen for cocaine and other illicit drugs,[3] Crystal contends the evidence of her sporadic drug use was insufficient to support the findings she was a current substance abuser and Christopher, Natalie and Francisco were at substantial risk of serious physical harm justifying the exercise of the juvenile court's jurisdiction. In addition, even if jurisdiction was appropriately extended over all four children, Crystal argues in-home support services could have been provided and there was insufficient evidence that removal of the three older children was necessary for their protection. Frank contends the evidence of his past marijuana use and criminal history was insufficient to support the finding he could not care for Brianna or to justify

---

[3] In the introduction to her opening brief Crystal asserts, "The children in this case were not similarly situated; if this Court finds that Brianna was at risk because she was an infant, that does not mean the other children were necessarily at a similar risk." Then, in the first paragraph of the argument section of her brief, Crystal states, "Here, there was no showing of any kind that Crystal's sporadic drug use negatively impacted her parenting to the point where her children, apart from Brianna, were at substantial risk of serious physical harm and that juvenile court jurisdiction was necessary." Crystal does not otherwise address the evidence at the jurisdiction and disposition hearing as it relates to Brianna.

removing her from his custody.  Frank also contends the court lacked an adequate basis for ordering him to participate in a full substance abuse program or individual counseling or to restrict him to monitored visits.

## DISCUSSION

1. *The Governing Statute and Standard of Review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)  Section 300, subdivision (b), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 (*Rocco M.*)), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.  (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.)  The court may consider past events in deciding whether a child presently needs the court's protection.  (*Ibid.*)  A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.)

In addition, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child.  Successful participation in

6

a treatment program for substance abuse may be considered in evaluating the home environment." (§ 300.2.) Exercise of dependency court jurisdiction under section 300, subdivision (b), is proper when a child is "of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] health and safety." (*Rocco M., supra,* 1 Cal.App.4th at p. 824.)

We review the juvenile court's jurisdictional findings and disposition orders for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.)[4] Under this standard "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828; accord, *In re Drake M.* (2012) 211 Cal.App.4th 754, 763 (*Drake M.*); *In re Savannah M., supra,* 131 Cal.App.4th at p. 1393.)

> 2. *Substantial Evidence Supports the Count b-1 Jurisdiction Findings and Disposition Order with Regard to Crystal*

Crystal used cocaine (and, based on the positive toxicology screen for Brianna at birth, amphetamine and methamphetamine) while she was pregnant, unquestionably endangering the health and safety of her unborn child. She also admitted she had used cocaine in the past although claiming she had stopped using when she was 17 years old.

---

[4] The burden of proof at the jurisdiction phase in the juvenile court is preponderance of the evidence; the burden of proof at disposition is clear and convincing evidence. (§ 355, subd. (a) [jurisdiction findings by preponderance of evidence]; § 361, subd. (c) [disposition findings by clear and convincing evidence].) Nonetheless, we review both jurisdiction findings and the disposition order for substantial evidence. (See *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881 ["The 'clear and convincing' standard . . . is for the edification and guidance of the trial court and not a standard for appellant review. [Citations.] '"The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal."'"]; see also *Crail v. Blakely* (1973) 8 Cal.3d 744, 750; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1525-1526.)

Given her initial false denial of any cocaine use in the days before Brianna was born, the juvenile court reasonably disbelieved Crystal's portrayal of limited, sporadic drug use. In addition, following the children's detention Crystal missed one drug test, properly considered the equivalent of a positive test result,[5] and failed to enroll in a substance abuse program or any other recommended programs. This evidence, taken together with Crystal's unstable lifestyle and cavalier attitude toward childcare —she left the children with her cousin Estella while she went out, sometimes for the entire night, without telling Estella where she was going or when she would return—fully supports the juvenile court's finding that Crystal's substance abuse endangered all four children's health and safety.

The analysis in *Drake M., supra,* 211 Cal.App.4th 754 by our colleagues in Division Three of this court does not compel a different conclusion. As the *Drake M.* court explained, when the Legislature rewrote section 300, subdivision (b), in 1987 to include as a basis for dependency jurisdiction a parent's inability to provide regular care for his or her child due to substance abuse, it included no definition of the term "substance abuse" in the statute. (*Id.* at p. 765.) Similarly, the legislative history revealed no specific discussion of how the term should be defined in practice. As a result, "[d]ependency cases have varied widely in the kinds of parental actions labeled 'substance abuse.'" (*Ibid.*)

To avoid inconsistencies, the *Drake M.* court proposed a definition of substance abuse based on the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000) (DSM-IV-TR), a definition that had also been used in an earlier dependency decision involving a somewhat different issue, *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322. (See *Drake M., supra*, 211 Cal.App.4th at p. 765.) Following *Jennifer A.*, the *Drake M.* court held "a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to

---

[5] Crystal did have three negative tests during this period.

8

(1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM-IV-TR. The full definition of 'substance abuse' found in the DSM-IV-TR describes the condition as '[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period: [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights).' (DSM-IV-TR, at p. 199.)" (*Drake M.*, at p. 766.)

We recognize the *Drake M.* formulation as a generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b). But it is not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court, and we are unwilling to accept Crystal's argument that only someone who has been diagnosed by a medical professional or who falls within one of the specific DSM-IV-TR categories can be found to be a current substance abuser. (See *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1490, fn. 10 [there is no "horizontal stare decisis" in the Court of Appeal; "we are not bound by the contrary decision by Division One of this court"]; *In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 409 [same].)[6] Here, we

---

[6] Not only are we not bound by Division Three's adoption of the DSM-IV-TR's definition of "substance abuse" but also that definition has been replaced in the more

believe Crystal's repeated use of cocaine and her ingestion of that drug while pregnant constitutes recurrent substance use that resulted in her failure to fulfill a major role obligation within the meaning of DSM-IV-TR. But even if Crystal's conduct fell outside one of the DSM-IV-TR categories, we have no doubt her use of cocaine while in the final stage of her pregnancy, combined with her admitted use of the drug in the past and her failure to consistently test or enroll in a drug abuse program, justified the juvenile court's exercise of dependency jurisdiction over her children.

In addition, because the children were six years old or younger at the time of the jurisdiction hearing—children of "tender years" in the language of *Rocco M.*—"the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm." (*Drake M., supra*, 211 Cal.App.4th at p. 767; accord, *Rocco M., supra*, 1 Cal.App.4th at p. 824.) Crystal did not adequately rebut that evidence. Indeed, her use of cocaine during the last months of her pregnancy confirmed her poor judgment and willingness to endanger her children's safety due to substance abuse. Thus, the decision to remove the children from her care and custody was supported by substantial evidence.

---

recent Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), published in May 2013 after the decision in *Drake M*, by a more broadly defined classification of "substance abuse disorders," which combines substance abuse and dependence. DSM-5 identifies 11 relevant criteria, including cravings and urges to use the substance; spending a lot of time getting, using or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use; and not managing to do what one should at work, home or school because of substance use. The presence of two or three of the 11 specified criteria indicates a mild substance use disorder; four or five indicate a moderate substance use disorder; and six or more a severe substance use disorder. (American Psychiatric Association, Highlights of Changes from DSM-IV-TR to DSM-5 <http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf>as of April 14, 2014.)

3. *The Count B-2 Jurisdiction Finding as to Frank Is Supported by Substantial Evidence*[7]

Frank, an unemployed, 22-year-old, former gang member, has been a daily user of marijuana for a number of years. The court reasonably disbelieved his claim he had stopped using marijuana two weeks before Brianna's birth because he was going to be a father, based in part on his initial request for a paternity test, plainly suggesting impending parenthood was not something he was planning for, and in part on his explanation he needed to use marijuana in the aftermath of being shot and his purported failed efforts to obtain a medical marijuana card. In addition, Frank was in violation of the terms of his parole because he was not drug testing regularly and had tested positive for marijuana.

Although Frank does not deny his regular, on-going use of marijuana, he cites several cases for the proposition that a parent's use of marijuana alone does not justify the juvenile court's exercise of jurisdiction over his or her child. (See, e.g., *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 ["[i]t is undisputed that a parent's use of marijuana '*without more*,' does not bring a minor within the jurisdiction of the dependency court"]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 453 [use of medical marijuana, without more, cannot support a jurisdiction finding].) But as the Court of Appeal explained in *Rocco M., supra,* 1 Cal.App.4th 814, cases finding a substantial

---

[7] "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [trial] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.'" (*Drake M., supra*, 211 Cal.App.4th at p. 762.) Frank does challenge the juvenile court's section 300, subdivision (b), findings as to Crystal and, accordingly, acknowledges Brianna is properly subject to dependency court jurisdiction. Nonetheless, Frank contends, and we agree, the merits of his appeal should be addressed because the jurisdiction findings in count b-2 as to him could adversely affect a future dependency or family law proceeding in which he may be involved. (See *Drake M.*, at p. 762; see also *In re I.A.* (2011) 201 Cal.App.4th 1484, 1494 [jurisdiction finding not reviewed in light of father's failure to suggest any way in which it could actually affect a future dependency or family law proceeding].)

physical danger to a child "tend to fall into two factual patterns.  One group involves an *identified, specific hazard* in the child's environment—typically an adult with a proven record of abusiveness.  [Citations.]  The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety."  (*Id.* at p. 824 [citing to cases involving an infant, a two year old and a child under three years old].)  Referring to the second category of cases identified in *Rocco M.*, the court in *Drake M.*, *supra*, 211 Cal.App.4th at page 767 held, to support jurisdiction over a 14-month-old child, the Department needed only to produce sufficient evidence that the father was a substance abuser—a showing it failed to make.  Here, Brianna was even younger:  less than two weeks old when the dependency petition was filed, and only three months old at the jurisdiction/disposition hearing.  Whether or not Frank's unemployment and repeated scrapes with the law were directly related to his chronic marijuana use, on this record the juvenile court properly found Frank's persistent and illegal use of marijuana demonstrated an inability to provide regular care for infant Brianna.

4.  *The Disposition Orders as to Frank Were Proper*

As was true with respect to Crystal, because Brianna is an infant, "the finding  of substance abuse [by Frank] is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm."  (*Drake M., supra*, 211 Cal.App.4th at p. 767; accord, *Rocco M., supra*, 1 Cal.App.4th at p. 824.)  In addition, as the juvenile court observed, Frank was not in compliance with the terms of his parole; Brianna had never lived with him; the paternal grandfather, with whom Frank was living, had not agreed to have the child placed in his home; and there had not been cooperation with the Department to have that home evaluated for safety.  Under these circumstances the decision not to place Brianna with Frank was proper.

Frank's additional objection to portions of the case plan—a full substance abuse program, individual counseling to address case issues and monitored visitation— similarly lacks merit.  Section 362, subdivision (d), provides: "The juvenile court may

direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section, . . . [including] a direction to participate in a counseling or education program . . . ." (§ 362, subd. (d).) Under section 362, subdivision (d), "[t]he juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a disposition order accordingly." (*In re A.E.* (2008) 168 Cal.App.4th 1, 4.) On appeal, "'this determination cannot be reversed absent a clear abuse of discretion.'" (*Ibid.*) Given Frank's daily use of marijuana and his failure to fulfill his responsibilities to meet the terms of parole, requiring participation in a drug abuse program and counseling, as well as monitored visitation, was well within the court's ample discretion.[8]

## DISPOSITION

The juvenile court's findings and orders are affirmed.


PERLUSS, P. J.

We concur:


WOODS, J.


ZELON, J.

---

[8] Minute orders from the section 366.21, subdivision (e), six-month review hearings on January 15, 2014 and February 28, 2014 indicate Frank is currently in custody, effectively mooting his challenge to the order requiring monitored visitation. As we advised the parties in a letter dated March 3, 2014, we take judicial notice of those two minutes orders pursuant to Evidence Code sections 452, subdivision (d), and 459.

13

4/28/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re CHRISTOPHER R. et al., Persons Coming Under the Juvenile Court Law. | B250806<br><br>(Los Angeles County<br>Super. Ct. No. CK99150) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>CRYSTAL R. et al.,<br><br>     Defendants and Appellants. | ORDER CERTIFYING OPINION FOR PUBLICATION<br>(No Change in Judgment) |

THE COURT:

The opinion in this case filed April 14, 2014 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), respondent's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

PERLUSS, P. J.          WOODS, J.          ZELON, J.