Filed 7/21/14  In re Kaliyah F. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re KALIYAH F., a Person Coming Under the Juvenile Court Law. | B253146 |
| | (Los Angeles County Super. Ct. No. CK76581) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>T.J.,<br><br>    Defendant and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Juvenile Court Referee.  Affirmed.

        Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

        Amir Pichvai for Plaintiff and Respondent.

                        _____

T.J. appeals from the juvenile court's finding and order declaring her daughter Kaliyah a dependent child of the court under Welfare and Institutions Code section 300, subdivision (b),[1] after it had sustained an allegation her history of substance abuse and current abuse of marijuana placed Kaliyah at substantial risk of serious physical harm. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

T.J., herself a former dependent child of the juvenile court, has had a significant history with the Los Angeles County Department of Children and Family Services (Department) as a parent. In 2009, when T.J. was still a teenager, her first born child, D.T., was removed from her custody as a result of domestic violence between T.J. and D.T.'s father, as well as the father's alcohol and marijuana use. T.J. failed to reunify with D.T., and D.T. was adopted when he was 18 months old.

In June 2011 the Department filed a section 300, subdivision (b), petition regarding then six-week-old Kaliyah alleging T.J. had a history of illicit drug use and was a current user of marijuana, creating a substantial risk of serious physical harm to Kaliyah. The petition was dismissed because T.J. agreed to participate in a voluntary family maintenance program. A few months later a new petition was filed and Kaliyah was taken into protective custody because T.J. had allowed a maternal aunt to use marijuana in Kaliyah's presence and marijuana was found in the home. In March 2013 jurisdiction was terminated after T.J. had completed all court-ordered programs including substance abuse treatment and random drug testing.

On August 5, 2013 the Department received a referral alleging general neglect of two-year-old Kaliyah by T.J, as well as a companion referral alleging T.J.'s third child, 11-month-old S.A., was being neglected by her father, H.A., and her paternal grandmother with whom S.A. was living. On August 26, 2013 T.J. told a Department social worker she had been living with Kaliyah, S.A., H.A. and the paternal grandmother when T.J. and H.A. ended their relationship. T.J. had left S.A. in the paternal

---

[1] Statutory references are to the Welfare and Institutions Code.

grandmother's care because T.J.'s living arrangements were not stable and she believed caring for two children under the age of two would be too difficult. T.J. did not know the paternal grandmother had her own history with the Department including allegations of drug use. Although the social worker observed Kaliyah was active, playful and appropriately groomed and dressed, the social worker asked T.J. to take a drug test because of the recently closed case involving Kaliyah. T.J. agreed, but did not show up for the test on August 30, 2013.

On September 13, 2013 T.J. tested positive for marijuana. T.J. explained she had been "out 'having a good time'" and used marijuana once while Kaliyah and S.A. were in the paternal grandmother's care. She had not previously disclosed this to the social worker because it was a one-time occurrence in August 2013 and she did not know if she would test positive.

On October 15, 2013 the social worker made an unannounced home visit and found Kaliyah to be appropriately dressed and well groomed. T.J. said she had not used marijuana since the previous incident and agreed to take a drug test. The results from the test taken three days later were positive with the level of marijuana twice that of the previous test. When confronted with the results, T.J. denied using marijuana and suggested the positive reading may have a "contact high" because she was around people who had smoked marijuana. After the social worker explained it was impossible to test positive without smoking marijuana or eating items containing it, T.J. admitted she had eaten a marijuana gummy bear. On October 31, 2013 the Department filed a section 300, subdivision (b), petition alleging T.J. had a history of substance abuse and was a current abuser of marijuana rendering her incapable of providing regular care for Kaliyah and placing the child at risk of harm.[2] Although asserting Kaliyah needed court supervision to ensure her safety, the Department recommended the child remain in T.J.'s home with T.J. to receive family maintenance services.

_____

[2] Kaliyah's father, D.F., who was incarcerated when the instant petition was filed, is not a party to this appeal.

At the combined jurisdiction and disposition hearing on November 25, 2013 the court sustained the petition as amended, finding in part T.J'.s "substance abuse endangers the child's physical health and safety and places the child at risk of physical harm." The court explained, "The mere use of marijuana without more ought not result in the court taking jurisdiction. Here there is more. . . . [T.J.] is a young mother. She has a history of drug involvement. She actually completed a substance abuse program. So one would think that she learned of the dangers of indulging in illegal substances, but she did not learn sufficiently. The court was persuaded at one time that she had learned. Her child was returned to her and the court terminated jurisdiction believing the child was not at risk. And just a very few months later, [T.J.] once again is indulging in drugs. Part of the more is her very poor judgment. . . . This is a young child two and a half years old. Perhaps [T.J.] is fortunate that she has not indulged in marijuana and become intoxicated so that she could not care for her child, but that may be the next step given her very poor judgment and based on her history."

Although sustaining the amended petition and declaring Kaliyah a dependent child of the court, the court concluded Kaliyah could be protected without removing her from T.J.'s physical custody. The court allowed Kaliyah to remain in the home and ordered family maintenance services for T.J., including random drug testing.

## DISCUSSION

### 1. *Governing Law and Standard of Review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) Section 300, subdivision (b), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care

4

for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 (*Rocco M.*)), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child presently needs the court's protection. (*Ibid.*) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216 (*Christopher R.*).)

In addition, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment." (§ 300.2.) Exercise of dependency court jurisdiction under section 300, subdivision (b), is proper when a child is "of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] health and safety." (*Rocco M., supra,* 1 Cal.App.4th at p. 824; see *Christopher R.*, *supra*, 225 Cal.App.4th at p. 1216.)

We review the juvenile court's jurisdiction findings for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.) Under this standard "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828; accord, *In re Drake M.* (2012)

211 Cal.App.4th 754, 763 (*Drake M*.); *In re Savannah M., supra,* 131 Cal.App.4th at p. 1393.)

2. *Substantial Evidence Supports the Jurisdiction Findings*

Relying primarily on *Drake M.*, *supra*, 211 Cal.App.4th 754 and *In re Destiny S.* (2012) 210 Cal.App.4th 999, T.J. argues there was insufficient evidence she was a substance abuser, not simply a user, and incapable of providing regular care for Kaliyah. (See *Drake M.*, at p. 764 ["jurisdiction based on 'the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse,' must necessarily include a finding that the parent at issue is a substance *abuser*"]; *In re Destiny S.*, at pp. 1001-1003 [no evidence mother's use of marijuana and amphetamine caused her to neglect daughter, who was a "healthy, happy preteen," had no behavioral or discipline issues, attended school regularly and wanted "'to go back with [her] mom'"].) In *Drake M.* the court held "a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the [American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000 (DSM–IV–TR)]." (*Drake M.*, at p. 766.)

In *Christopher R.*, *supra*, 225 Cal.App.4th at page 1218, filed after the Department submitted its brief on appeal, this court "recognize[d] the *Drake M.* formulation as a generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b)," but held it was "not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court." (*Ibid*.) We also noted the definition of "substance abuse" was replaced with the more broadly defined classification of

6

"substance use disorders" in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) published after *Drake M.* (*Christopher R.*, at p. 1218, fn. 6.)[3]

To be sure, as T.J. argues, there was no evidence her failed and sometimes violent relationships with the fathers of her three children, inability to find stable housing and legal problems—T.J. was arrested for battery or assault several times while still a juvenile and convicted as an adult in 2010 for simple assault— were directly related to her marijuana use. Nevertheless, there was substantial evidence supporting the juvenile court's finding that T.J.s repeated use of marijuana created a substantial risk of harm to Kaliyah: Within months of completing court-ordered substance abuse treatment and termination of jurisdiction in the previous case involving Kaliyah, T.J. failed to participate in a drug test notwithstanding her agreement to do so; tested positive at the subsequently scheduled drug test; failed a second drug test a month later even though she knew she was under the Department's scrutiny; and repeatedly lied about her marijuana use, including blaming the second positive result on a "contact high." Given two-year-old Kaliyah's "tender" age, "'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm.'" (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219; see *Drake M.*, *supra*, 211 Cal.App.4th at p. 767.) These events, considered in toto, constituted substantial evidence fully justifying the juvenile court's exercise of dependency jurisdiction, while permitting Kaliyah to remain in the home, so it could be "watchful of this child and her mother to ensure that mother can provide a sober and stable lifestyle."

---

[3] The "substance use disorders" classification "identifies 11 relevant criteria, including cravings and urges to use the substance; spending a lot of time getting, using or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use; and not managing to do what one should at work, home or school because of substance use. The presence of two or three of the 11 specified criteria indicates a mild substance use disorder; four or five indicate a moderate substance use disorder; and six or more a severe substance use disorder." (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1218, fn. 6.)

## DISPOSITION

The juvenile court's findings and order declaring Kaliyah a dependent child of the court are affirmed.


PERLUSS, P. J.


We concur:


WOODS, J.


ZELON, J.