Filed 12/18/14  In re R.V. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.V. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VERONICA C.,<br><br>Defendant and Appellant. | F069301<br><br>(Super. Ct. Nos. 14CEJ30045-1, 14CEJ30045-2, 14CEJ30045-3)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Fresno County.  Mary Dolas, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Jennifer Gibson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Amy K. Cobb, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Cornell, J. and Detjen, J.

Appellant Veronica C. is the mother of two sons, 12-year-old R.V. and three-year-old A.V., and a daughter, nine-month-old D.R., the subjects of this appeal. The juvenile court adjudged the children its dependents at an uncontested jurisdictional hearing after finding that Veronica's methamphetamine abuse placed them at a substantial risk of harm. (Welf. & Inst. Code, § 300, subd. (b).)[1] Veronica contends there was insufficient evidence to support the juvenile court's jurisdictional finding and asks this court to vacate the finding and direct the juvenile court to dismiss the dependency proceedings. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In mid-February 2014, the Fresno County Department of Social Services (department) filed a dependency petition on behalf of then 11-year-old R.V., two-year-old A.V., and newborn D.R., after D.R. and Veronica tested positive for methamphetamine. D.R. was not Veronica's first drug-exposed baby. In September 2011, Veronica and newborn A.V. tested positive for methamphetamine.

Veronica identified her husband David R. as D.R.'s father and Rickey V. as the father of R.V. and A.V. She said David was employed and denied any domestic violence in their relationship. She also denied using corporal punishment to discipline the children.

Veronica's criminal history consisted of one conviction in January 2011 for possession of a controlled substance for which she was sentenced to 24 months of probation. David's criminal history was more extensive but, according to Veronica, he was on parole and doing well. He was not using drugs and was not aware she was using methamphetamine. She admitted using methamphetamine in early February 2014, but

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

said David and the children were not home at the time. Prior to that, she had not used methamphetamine since she was four months pregnant with D.R.

A social worker met with R.V. at his maternal grandmother's home. He was well-dressed and well-groomed. He denied being physically punished and said Veronica punished him by sending him to his room. He said there was no arguing or fighting in the home and that his mother took good care of him. He said he always had food to eat and clean clothes to wear. He did not know what drugs or alcohol looked like and had not seen anyone in the home that he thought was using drugs. He said he felt safe at home and there was nothing that needed to change to make him feel safer.

David's probation officer told the social worker that David had a history of drug use. He completed substance abuse treatment in October 2013 and was testing negative for drugs. He was aware that David worked long hours and was rarely home. He said the children were "very good kids" and that David's parents were very involved with the children.

Social workers met with David at the family home. He was surprised and upset to find out that Veronica had been using drugs. He said he worked from 6:30 a.m. to 6 p.m. or later and did not suspect that Veronica was using drugs. The social workers observed the home to be "well above minimal standards." It was very clean and organized and there was plenty of food. In addition, David and Veronica had purchased furniture, clothes and supplies for the baby.

After conducting their interviews, the social workers met with Veronica, David, and various relatives, including David's parents and Veronica's mother, to discuss a plan for the children. Veronica and David agreed to participate in voluntary family maintenance services and the department agreed to allow D.R. to be discharged to Veronica and David's custody as long as they lived with David's parents. The department also agreed that R.V. could remain with his maternal grandmother and A.V. could remain with his paternal grandmother.

The department filed a dependency petition, alleging under section 300, subdivision (b), that the children had suffered, or were at substantial risk of suffering, serious physical harm or illness because Veronica "has a history of substance abuse (methamphetamine) that negatively affects her ability to provide regular care, supervision and protection for her children." In support of this allegation, the department cited D.R. and A.V.'s positive toxicology for methamphetamine at birth, Veronica's disclosure that she used methamphetamine on or about February 2, 2014, and February 7, 2014, and her completion of voluntary maintenance services in April 2012. The voluntary maintenance services Veronica completed in April 2012 included three months of inpatient substance abuse treatment and four months of aftercare, parenting classes, and counseling.

Shortly after the petition was filed, Veronica and David relocated to the home of David's parents with all three children. In its report for the initial hearing, the department recommended the juvenile court detain the children but leave them in Veronica and David's care. The department believed it was in the children's best interest to remain with their parents because Veronica previously completed drug treatment and parenting, David was employed and doing well on parole, they had strong family support, the children appeared well cared for, and the home was above minimum standards.

In addition, the department reported that the family had two prior child welfare referrals. The first was received in January 2007, alleging R.V. went to school with a scratch on his left cheek and disclosed that his father, Rickey, bit him. The department investigated but found no evidence of general neglect. The other referral was received in September 2011, after A.V. was born drug-exposed and Veronica reportedly fell asleep while feeding him a bottle and allowed him to drop onto the floor. He was observed for 24 hours and determined to be unharmed. After speaking to Veronica, Rickey, and the children's grandparents, who agreed to be a support for the parents, the department offered Veronica and Rickey voluntary family maintenance services.

4

At the initial hearing, the juvenile court ordered the children detained but allowed them to remain in Veronica and David's custody. The juvenile court ordered the department to refer Veronica for parenting classes, substance abuse and mental health evaluations, and random drug testing. The court also ordered the department to offer David parenting classes and a mental health evaluation, and a mental health evaluation for Rickey.

By the jurisdictional hearing, Veronica completed a substance abuse evaluation and was testing negative for drugs. She told the substance abuse evaluator that she had been using methamphetamine since the age of 16, approximately 17 years. She remained abstinent from September 2011, until she relapsed in December 2013. She subsequently used methamphetamine six or seven times until D.R.'s birth in early February 2014. The evaluator believed Veronica may have minimized her drug use but not significantly and recommended she participate in intensive outpatient treatment.

In its report for the jurisdictional hearing, the department recommended the juvenile court sustain the petition and allow the children to remain with Veronica and David under family maintenance services. The department believed Veronica and David's willingness to participate in services and their strong family support system rendered their home safe for the children.

In April 2014, Veronica appeared at the jurisdictional hearing and submitted the matter for decision based on the allegations in the petition and the information contained in the department's jurisdictional/dispositional report. The juvenile court found the allegation in the petition was true and the children came within the description of section 300, subdivision (b). The court ordered family maintenance services and set a family maintenance review hearing for October 2014. The court ordered visitation for Rickey.

This appeal ensued.

5

**DISCUSSION**

Veronica contends the juvenile court's jurisdictional finding must be reversed because there was insufficient evidence at the time of the jurisdictional hearing that her drug use placed the children at a substantial risk of harm. We disagree.

The juvenile court may adjudge a child a dependent under section 300, subdivision (b) when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent … to provide regular care for the child due to the parent's … substance abuse." (§ 300, subd. (b).)

"Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdictional hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. [Citation]. The court may consider past events in deciding whether a child presently needs the court's protection. [Citation.] A parent's '"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*In re Christopher R*. (2014) 225 Cal.App.4th 1210, 1215-1216 (*Christopher R*.).) "In addition, the Legislature has declared, 'The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child.'" (*Id*. at p. 1216.)

We review the juvenile court's finding under section 300 for substantial evidence. (*In re Matthew S*. (1996) 41 Cal.App.4th 1311, 1319.) "Under this standard '[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible.'" (*Christopher R*., *supra*, 225 Cal.App.4th at p. 1216.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order." (*In re T.V*. (2013) 217 Cal.App.4th 126, 133 (*T.V*.).)

Interestingly, Veronica ignores the fact that the juvenile court found she abused methamphetamine and contends section 300, subdivision (b) does not apply because her "drug history" did not harm the children. The finding, however, that Veronica *abused* methamphetamine was foundational to the ultimate finding under subdivision (b) and is supported by the evidence. Veronica had been using methamphetamine for half of her life and had only a brief period of abstinence within the three years prior to the children's initial removal. Further, during those three years, she delivered two drug-exposed babies approximately two and one-half years apart and was convicted of possessing a controlled substance. On that evidence, the juvenile court could reasonably find that Veronica's methamphetamine use was active, ongoing, and constituted substance abuse.

Further, the juvenile court could reasonably find that Veronica's methamphetamine abuse placed the children at a substantial risk of harm. As to D.R., the juvenile court could find a presumptive risk based on Veronica's act of exposing D.R. to methamphetamine in utero. (*In re Monique T*. (1992) 2 Cal.App.4th 1372, 1378, [child born with dangerous drugs in the body is legally presumed to be a child described by section 300, subdivision (b)].) Further, the juvenile court could find that Veronica's history of methamphetamine abuse and high risk of relapse placed all the children at risk of harm. Her high risk of relapse is evidenced by her failure to seek help after relapsing in December 2013. She knew she was pregnant and should have known by virtue of her prior drug treatment where to turn. Instead, she continued to use and undoubtedly would have continued to do so had her methamphetamine abuse not been discovered during D.R.'s delivery.

Veronica nevertheless contends there was insufficient evidence that the children were at risk of harm at the time of the jurisdictional hearing because she was then testing negative for drugs and the evidence showed that she and David took good care of the children. Though true, such evidence in this case is not compelling. Veronica's brief demonstration of abstinence in light of her years of methamphetamine abuse did not

7

mean she had achieved recovery. Further, the harmful effects of methamphetamine abuse on children are well known. The fact that the children did not appear to be experiencing them at the time of the jurisdictional hearing does not mean that they were not at risk and none of the cases Veronica cites persuade us otherwise. In assessing risk to a child, the juvenile court is not confined to a snapshot in time and it does not have to wait until a child is "'seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citations.] The focus of section 300 is on averting harm to the child." (*T.V.*, *supra*, 217 Cal.App.4th at p. 133.)

We also reject Veronica's contention that the department's decision to place the children with her demonstrates that there was not a substantial risk that they would suffer serious harm in her care. The department's decision to place the children in her care and the juvenile court's decision to assume jurisdiction are based on different considerations. The court's decision means that Veronica's drug abuse posed sufficient risk to warrant its intervention and oversight over the family situation until it was safe to withdraw. It also allowed the court to provide the family services and departmental assistance. The department's placement of the children in Veronica's custody means that the risk Veronica posed was not so great that the children could not be made safe in the home with protective measures.

In light of the foregoing, we conclude substantial evidence supports the juvenile court's jurisdictional finding.

## DISPOSITION

The judgment is affirmed.