Filed 11/22/23  In re J.M.L. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re J.M.L. et al., Persons Coming Under the Juvenile Court Law. | B324865 (Los Angeles County Super. Ct. No. 22CCJP00486A–C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> D.E., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Judge Pro Tempore. Affirmed.

Erin Riley Khorram, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

------

## I.    INTRODUCTION

D.E. (mother) appeals from the juvenile court's disposition order removing her child C.C. (born 2021) from her custody.[1] We affirm.

The parties are familiar with the facts and procedural history, and our opinion does not meet the criteria for publication.  (Cal. Rules of Court, rule 8.1105(c).)  We therefore resolve this appeal by memorandum opinion pursuant to Standard 8.1 of the Standards of Judicial Administration and consistent with constitutional principles.  (Cal. Const., art. VI, § 14 ["Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated"]; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1263, fn. omitted [three-paragraph discussion of issue on appeal satisfies

------

[1]    Mother's arguments on appeal also purport to apply to her other children, J.M.L. (born 2008) and J.C.L. (born 2012).  The juvenile court's removal order, however, applied only to C.C.  At the disposition hearing, the court terminated jurisdiction and granted sole legal and physical custody of J.M.L. and J.C.L. to their father.  Accordingly, and although our holdings would apply with equal force to J.M.L. and J.C.L., we will address mother's removal arguments as they pertain to C.C.

2

constitutional requirement because "an opinion is not a brief in reply to counsel's arguments. [Citation.] In order to state the reasons, grounds, or principles upon which a decision is based, [an appellate court] need not discuss every case or fact raised by counsel in support of the parties' positions"].)

## II.  DISCUSSION

Mother contends the juvenile court erred in ordering C.C. removed from her custody. We disagree.

### A.  *Standard of Review*

"The applicable statute, [Welfare and Institutions Code] section 361, subdivision (c), "'is clear and specific: Even though children may be dependents of the juvenile court, they shall not be removed . . . unless there is clear and convincing evidence of a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being *and* there are no 'reasonable means' by which the child can be protected without removal.'" [Citations.] [¶] . . . [¶]

"'On appeal from a dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.' ([*In re*] *Ashly F.* [(2014)] 225 Cal.App.4th [803,] 809; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005 ['when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole,

3

contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof"].)  ""The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.'  [Citation.]"  [Citation.]'  [Citation.]" (*In re I.R.* (2021) 61 Cal.App.5th 510, 520–521.)

B.    *Substantial Danger*

Mother contends substantial evidence does not support the juvenile court's finding there was a substantial danger to C.C. if he was returned to mother's custody because she completed a 60-day drug treatment program and tested negative consistently in that program after her first positive test.  Substantial evidence shows that mother neither fully completed her drug program nor tested negative consistently after she entered the program.

Mother had a long history of substance abuse including methamphetamine, marijuana, and alcohol.  On April 25, 2022, mother entered a residential drug treatment program at Tarzana Treatment Centers (Tarzana).  The day mother entered the program she tested positive for amphetamines, marijuana, and methamphetamine.  The program was to last from 60 days to 120 days, based on mother's needs.  As part of the program, mother was "expected to work with a counselor to develop a thorough relapse prevention plan which will include transitioning to a safe and structured sober living environment and engaging in [her] recovery beyond completing treatment."

Mother remained in the Tarzana program for the minimum 60 days and received a certificate of completion on June 23, 2022.  On July 1, 2022, a social worker spoke with C.C.'s caregiver who

4

reported that mother's sister stated she was "done with mother as she is back on drugs." (See *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"].)

As of July 13, 2022, the Department reported that after completing the Tarzana program, "mother chose not to participate in after care services through her drug treatment program although aftercare was recommended." Mother also did not "ma[k]e herself available to continue drug testing" for the Department. As of August 25, 2022, some three weeks before the September 16, 2022, disposition hearing, Tarzana's director reported that mother "**ha[d] <u>not</u> been active in aftercare . . . .**"

Although mother had six negative drug tests while in the Tarzana residential program, those tests occurred over a 21 day period from May 5, 2022, to May 25, 2022. After exiting the program, mother failed to show for five drug tests from August 4, 2022, to September 1, 2022. Each of those five missed drug tests can "properly [be] considered the equivalent of a positive test result" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217, fn. omitted), especially in light of mother's long history of drug abuse.

C.    *Reasonable Means*

Mother contends substantial evidence does not support the juvenile court's finding there were no reasonable means to protect C.C. without removing him from her custody because the Los Angeles County Department of Children and Family Services (Department) could have made unannounced visits to mother's

5

home and the court could have ordered mother to participate in random drug tests.[2]  Mother's recalcitrant attitude toward complying with her aftercare program, drug testing, and court orders is substantial evidence supporting the court's no reasonable means finding.

As discussed above, mother did not comply with the aftercare part of her Tarzana program and missed five drug tests after she was discharged from the Tarzana program.

On June 21, 2022, C.C.'s caregiver told a social worker that mother "continued to ask" her to drop off C.C. with mother for overnight visits at mother's home even though mother knew it was against juvenile court orders.[3]  While attempting to schedule a visit around September 2022, mother asked C.C.'s caregiver if she could bring C.C.'s father.  When the caregiver told mother that she and C.C.'s father could not visit together, mother responded, "'How the fuck will they know?'"

On July 21, 2022, the juvenile court ordered the social worker to conduct unannounced visits at mother's home.  On August 18, 2022, social workers attempted an unannounced visit.  They knocked on mother's front and back doors several times and called mother's name near windows.  Even though the back door and two windows were open, the social workers did not receive a

---

[2]  Mother also contends the Department could have attempted to ensure C.C.'s father was not living in mother's home.  Because substantial evidence supports the court's substantial danger and reasonable means findings concerning mother's drug abuse, we need not address mother's contention concerning C.C.'s father's residence.

[3]  This conversation took place two days prior to mother's discharge from the Tarzana residential program.

response.  On August 25, 2022, social workers returned unannounced to mother's home and knocked on the front door and windows without a response.  One of the social workers called mother on the telephone.  Mother claimed not to be home.  Later, C.C.'s caregiver reported to the Department that mother told her she was home on both occasions, but did not open the door.

### III.   DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

MOOR, J.

7