Filed 7/29/14  In re Harmony C. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re HARMONY C., et al., Persons Coming Under the Juvenile Court Law. | B253938 (Los Angeles County Super. Ct. No. DK02158) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  L.C., et al.,  Defendants and Appellants. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Sherri S. Sobel, Juvenile Court Referee.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant L.C.

Deborah Dentler, under appointment by the Court of Appeal, for Defendant and Appellant K.T.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, John Savittieri, Deputy County Counsel, for Plaintiff and Respondent.

L.C. (father) and K.T. (mother) appeal from the dependency court's January 13, 2014 jurisdictional findings and dispositional orders regarding their children, one year old Harmony C., and five month old Sophia C. Father challenges the court's jurisdictional finding that he was a substance abuser and his current marijuana use caused the children to suffer, or to be at a substantial risk of suffering, serious physical harm or illness.[1] Mother challenges the dispositional order requiring both parents to participate in a "full drug/alcohol treatment program with aftercare."[2] We conclude substantial evidence supports the court's jurisdictional finding, and the court's dispositional order was not an abuse of discretion. We affirm.

### STATEMENT OF FACTS AND PROCEDURE

On August 30, 2013, the Department of Children and Family Services (Department) received a referral reporting Sophia was the victim of general neglect by mother, and Harmony was at risk. Mother and Sophia tested positive for marijuana at Sophia's birth. Mother told the children's social worker (CSW) that she had been using marijuana since she was 18 years old, but stopped three months into her pregnancy. However, mother tested positive for marijuana throughout her pregnancy and father said she had smoked marijuana "right before" giving birth. Mother stated she could stop using marijuana if she wanted. She claimed to have a medical marijuana card but it was expired, and failed to renew it because she was pregnant. Mother has been in a relationship with father for nine years. She said father uses marijuana and has a medical marijuana card. When the CSW interviewed father, he said he knew mother was using marijuana and admitted to a referral history with the Department regarding the mother of

---

[1] Mother joins in, and incorporates by reference, father's argument. (Cal. Rules of Court, rule 8.200(a)(5).)

[2] Father joins in, and incorporates by reference, mother's argument. (Cal. Rules of Court, rule 8.200(a)(5).)

2

his other child.[3]  He explained this experience to mother and told her to stop smoking marijuana, but she would not listen.  Mother and father agreed to a safety plan with the Department where mother would stop smoking marijuana, father would not smoke around the children, and both parents would ensure they were not intoxicated while caring for the children.  On September 3, 2013, mother and father tested positive for marijuana.

On September 17, 2013, the safety plan was amended to include the condition that as long as mother tested negative for drugs, the family would continue to receive voluntary family maintenance services.  But if she tested positive, the Department would seek a removal order and initiate a juvenile dependency case.  Both mother and father would also participate in a substance abuse program with random drug testing, individual counseling, and parenting classes.  The parental grandmother, who lived with the family, would care for the children and not leave them alone with mother and father.

On September 24, 2013, the Department received a second referral reporting Sophia was a victim of severe neglect by mother and father, and Harmony was at risk.  Sophia weighed 6 pounds 14 ounces at birth and a week later, Sophia's weight dropped to 6 pounds 8 ounces.  Dr. Feig, Sophia's pediatrician, said the parents missed two follow-up appointments without any explanation.  When Dr. Feig saw Sophia again, her weight dropped to 6 pounds 6 ounces.  By September 24, 2013, Dr. Feig determined Sophia had stopped growing and diagnosed her with "failure to thrive."  Mother and father could not tell Dr. Feig how much they were feeding Sophia.  Dr. Feig suspected mother and father were "having trouble processing the directions" and "mixing the formula incorrectly."

---

[3] The Department records showed that a referral was received on September 17, 2004, regarding father's child, Lorenzo C.  The referral stated that the child's mother had admitted to smoking marijuana while pregnant and had been smoking the drug since she was 16 years old.  Father denied being aware of Lorenzo's mother using the drug while she was pregnant.  At the time, father admitted he also smoked marijuana and said he was willing to seek treatment to stop.  Father and Lorenzo's mother agreed to voluntary services that included parenting classes, a substance abuse treatment program, and random drug testing.

3

Dr. Feig said he had told the parents at least 10 times how much they should be feeding Sophia. By October 4, 2013, Sophia had gained some weight since her last visit with Dr. Feig, but she was in the 10th percentile for both weight and height. Mother was given two medications to administer to Sophia for thrush and diaper rash four times a day, however, mother stated "she had not read the medication boxes and was only administering the medications twice daily."

On October 11, 2013, father told the CSW that he no longer needed marijuana for his head injury and stopped using the drug. He was very proud of himself for ceasing his marijuana use. Mother also told the CSW that she stopped using marijuana. Six days later, the CSW received a positive toxicology drug screen from October 3, 2013, for mother and father. Since their last positive test results, father's results came down from 1690 ng/ml to 790 ng/ml, while mother's increased from 171 ng/ml to 191 ng/ml.

Thereafter, the Department obtained an order for removal of the children, placed them with a paternal aunt, and filed a petition alleging jurisdiction under Welfare and Institutions Code section 300, subdivision (b), as to both children.[4] The petition contained three factual allegations (i.e. counts). Count b-1 alleged that Sophia "was born suffering from a detrimental condition. Such condition consists of a positive toxicology screen for marijuana. Such condition would not exist except as the result of unreasonable acts by . . . mother, placing the child at risk of serious physical harm [sic] damage. Said substance abuse by . . . mother, endangers the child's physical health and safety and places the child at risk of physical harm and damage." Count b-2 alleged that mother "has a history of substance abuse and is a current user of marijuana, which renders . . . mother incapable of providing regular care for the children." Mother used marijuana during her pregnancy with Sophia and had a positive toxicology screen for marijuana at Sophia's birth. On September 3, 2013, and on October 3, 2013, mother had positive toxicology screens for marijuana. "On 10/3/13 and on prior occasions in 2013,

---

[4] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

. . . mother was under the influence of marijuana, while the children were in the mother's care and supervision . . . . Mother's substance abuse endangers the children's physical health, safety and well being and creates a detrimental home environment, placing the children at risk of physical harm and damage." Count b-3 alleged that father "has a history of substance abuse and is a current abuser of marijuana which renders . . . father incapable of providing regular care for the children. On 10/3/13 and 9/3/13, . . . father had positive toxicology screens for marijuana. On 10/3/13 and on prior occasions in 2013, . . . father was under the influence of marijuana, while the children were in the father's care and supervision. . . . Father's substance abuse endangers the children's physical health and safety and creates a detrimental home environment, placing the children at risk of physical harm and damage."

At the November 6, 2013 detention hearing, the court found a prima facie case had been established for detaining the children, placed the children in temporary custody of the Department, and ordered the children to remain with their paternal aunt.

A dependency investigator (DI) interviewed mother and father separately regarding the petition allegations. Mother stated she did not use marijuana often, but used marijuana towards the end of her pregnancy because she wanted to get "high." Although she said she had only smoked one "blunt" during her pregnancy, mother was around father when he was using marijuana. Mother denied being under the influence of marijuana while caring for her children. She explained that the children would be inside the house with their parental grandmother while she would be smoking marijuana outside, and "I wouldn't be high that long. It didn't last that long. Probably about 30 minutes." Mother said she had been smoking marijuana for the past nine years, since she was 18 years old. She denied using marijuana since Sophia's birth. Mother said father smokes marijuana outside when the children are not around. She claims, "I've never seen him high around the children." When asked by the DI how she fed Sophia and fixed her formula, "mother was unable to." Father said mother smoked marijuana but never when the children were home. However, father tried to get her to stop using marijuana while pregnant but mother refused. Father stated he obtained a medical marijuana card a year

5

ago for his bad headaches as a result of head injury and had never used marijuana around the children. Other than the medical marijuana card, father could not provide any documentation verifying his injury or treatment. Father has been smoking marijuana since he was 11 years old, but contends he does not use marijuana every day.

Mother reported she was enrolled in a substance abuse program where she received treatment four days a week and was participating in parenting classes, individual counseling, anger management, and domestic violence classes. The DI spoke with mother's counselor who said mother's attendance was good and she was compliant, but she continued to test positive for marijuana. Father had been participating in a drug abuse program, parenting classes, individual counseling, substance abuse education, and domestic violence prevention. The DI noted in her report that after the Department's intervention, "Sophia began gaining weight which suggests that the child's Failure to Thrive may have been due to the care provided by the parents and not due to a medical disorder." The DI believed that considering the parents' "extensive history of marijuana use along with being responsible for the care of two children under the age of five is concerning." The Department recommended the children remain placed with their paternal aunt and the parents receive family reunification services.

The court conducted an adjudication hearing on January 13, 2014, admitting the Department's reports into evidence, father's certificate of completion of an anger management course dated January 9, 2014, and mother's substance abuse program progress letter dated December 18, 2013. Father's counsel asked the court to dismiss the allegation that father was a substance abuser pursuant to *In re Drake M.* (2013) 211 Cal.App.4th 754 (*Drake*), and *In re Destiny S.* (2012) 210 Cal.App.4th 999 (*Destiny*). He argued that father had a medical marijuana card, and although he continued to test positive, his levels had decreased. He contended that father is now testing negative for marijuana and the Department had not proven a nexus. Mother's counsel asked the court to dismiss the petition and argued that the Department had not met its burden of demonstrating mother is a substance abuser, indicating she is testing negative for marijuana and there is no evidence of a current risk. The children's counsel asked the

6

court to sustain the petition, and argued that both mother and father had been unable to stop their marijuana use even when faced with legal proceedings and the possibility of losing temporary custody of their children. Furthermore, counsel argued that the standard for a substance abuser as outlined in *Drake M.* is met here. The Department pointed out father has been using marijuana since he was 13 years old (actually 11 years old), and mother had been using since she was 18 years old. The Department argued that the parents' history of marijuana use demonstrates their dependence on the drug, which is highlighted by the fact that Sophia was born with marijuana in her system. The Department asked the court to sustain the petition.

The court found mother's use of marijuana had directly impacted Sophia in a significant way and both parents had to stop using marijuana. The court concluded that the Department had met its burden and sustained the petition on all three counts. The court then proceeded to disposition and noted that once the court and the Department got involved, the parents "follow[ed] through beautifully" and there was no reason the children could not be returned home. The court declared the children dependents under section 300, subdivision (b), and placed them under the Department's supervision. The court then released the children to the custody of the parents. The court also ordered the parents to complete a full drug/alcohol program with aftercare, submit to random drug testing, participate in a 12-step program with a sponsor, a parenting program, and individual counseling. The court set the six-month review hearing for July 14, 2014.

Mother filed a notice of appeal on January 13, 2014. Father filed a notice of appeal on January 14, 2014.

## DISCUSSION

Father contends that the evidence was insufficient to support the dependency court's finding that he was a substance abuser and his current marijuana use, as alleged in count b-3, caused Sophia and Harmony to suffer, or to be at a substantial risk of suffering, serious physical harm or illness. Mother contends that the court's order

7

requiring both mother and father to participate in a "full drug/alcohol treatment program with aftercare" was an abuse of discretion.

## Mootness/Sufficiency of the Jurisdictional Order as to Father

As an initial matter, the Department contends that review of father's appeal is moot in that the children would remain dependents of the court due to the jurisdictional findings as to mother.[5] We agree with the Department that "a jurisdictional finding good against one parent is good against both" (see *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397), and that, once a child is within the jurisdiction of the dependency court, the court may fashion its dispositional orders as to each parent, according to the circumstances of each case. Our review of father's challenge to the jurisdictional order pertaining to his conduct is therefore discretionary.

We exercise our discretion to discuss the sufficiency of the jurisdictional evidence as it pertains to father, only because it provides the background relevant to father's challenge to the dispositional order. Substantial evidence clearly supports the jurisdictional finding.

## Standard of Review

"On appeal, the 'substantial evidence' test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.]" (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433, disapproved on another ground in *In re J.N.* (2010) 181 Cal.App.4th 1010, 1023.) We must uphold the jurisdictional findings if, "after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is substantial evidence to support the findings. [Citation.]" (*In re Monique T.* (1992) 2 Cal.App.4th

---

[5] Father and mother do not challenge the court's jurisdictional findings as to count b-1 or count b-2.

8

1372, 1378.)  We resolve all conflicts in support of the determination, examine the record in a light most favorable to the dependency court's findings and conclusions, and indulge all legitimate inferences to uphold the court's order.  (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379, disapproved on another ground in *In re A.J.* (2011) 197 Cal.App.4th 1095, 1105; *In re Tania S*. (1992) 5 Cal.App.4th 728, 733-734.)

## Jurisdictional Finding

Father's contention that the evidence was insufficient to support the court's finding that he was a substance abuser and his current use caused the children harm, or to be at substantial risk of suffering harm, lacks merit.

Section 300, subdivision (b), provides in pertinent part:  "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness."  Subdivision (b) authorizes the court to exercise jurisdiction if a child is at substantial *risk* of harm, and does not prohibit jurisdiction simply because the harm has not yet materialized.  (*In re Leticia S.* (2001) 92 Cal.App.4th 378, 383, fn. 3, disapproved on another ground in *In re Bryan D.* (2011) 199 Cal.App.4th 127, 144 [dependency law "does not require a child to be actually harmed before the [Department] and the courts may intervene"].)

Although father does not deny his regular, on-going use of marijuana, he cites several cases for the proposition that a parent's use of marijuana alone does not justify the court's exercise of jurisdiction over his children.  (*Drake M., supra,* 211 Cal.App.4th at pp. 768-769; see *Destiny S., supra,* 210 Cal.App.4th at p. 1003 ["It is undisputed that a parent's use of marijuana 'without more,' does not bring a minor within the jurisdiction

9

of the dependency court].)  In *Drake M.*, the dependency court found jurisdiction over a child whose father smoked legal marijuana.  (*Id.* at p. 761.)  The appellate court addressed the issue of whether habitually smoking legal marijuana constituted conduct that rendered a father incapable of providing regular care and supervision to a child.  The court found that such conduct could fall within the purview of section 300, subdivision (b), if a child has suffered or was at substantial risk for suffering serious physical harm or illness as a result of:  (1) a parent's inability to provide regular care due to substance abuse or (2) the parent's failure to adequately supervise or protect the child. (*Id.* at p. 763.)  The court held that the Department had failed to prove the father was a substance abuser because he had a legal, medical recommendation to use marijuana for recurring knee pain and could adequately care for the child.  (*Id.* at p. 767.)  Thus, the court overturned the dependency court's finding.

Father's situation is distinguishable from *Drake M.*, where there was a casual or prescribed use of marijuana with no history or evidence of risk of harm.  Here, there was ample evidence that father has a history of substance abuse that spans over 24 years.  Father's inability to stop using marijuana in the face of negative consequences demonstrates his chronic abuse of the drug.  He continued to use marijuana around mother even though he tried to get mother to stop using marijuana during her pregnancy.  During the Department's investigation, father knew that continued use could subject the family to a dependency case and supervision by the Department and court.  However, he had tested positive for marijuana on every administered test, and contrary to his counsel's contention, he has yet to test negative.  Indeed, father recognized his own substance abuse problem by voluntarily enrolling in classes to address the issue, participating in a drug abuse program and substance abuse education during the Department's investigation.  Up until father obtained his medical marijuana card a year ago, he was using marijuana recreationally and illegally.  Other than the medical marijuana card, father could not provide any documentation verifying the medical purpose of his marijuana use.  Father continued using marijuana after he no longer needed it for his alleged medicinal purpose.  At one point, father told the CSW he stopped using

marijuana, but six days later, the CSW received his positive toxicology drug screen.  The dependency court could find that father's lack of candor with the Department brings into question the extent of his abuse of marijuana and possible use around the children.

We disagree with father's contention that the Department failed to establish a nexus between his marijuana use and harm or risk of harm to the children.  Father's marijuana use has led to a situation where there are valid safety concerns for the children, most notably Sophia's diagnosis of "failure to thrive" because of the parents' inadequate care.  Furthermore, mother and father missed two follow-up appointments for Sophia without any explanation, at a time when Sophia was losing a significant amount of weight.  Mother and father could not tell Dr. Feig how much they are feeding Sophia.  Dr. Feig suspected mother and father were "having trouble processing the directions" and "mixing the formula incorrectly," even though Dr. Feig told the parents at least ten times how much they should be feeding Sophia.  We agree with the Department's conclusion that the parents' "extensive history of marijuana use along with being responsible for the care of two children under the age of five is concerning."  Jurisdiction is proper when a parent has a history of substance abuse and the evidence supports an inference that the parent's substance abuse places a child of tender years at risk based on the parent's inability to provide regular care.  (*In re Christopher R.* (2014) 225 Cal.App.4th 1210 (*Christopher R.*) [distinguishing *Drake M.* and affirming jurisdiction over parents with a history of drug abuse, where children were under six years old and court disbelieved parents' statements they were no longer using drugs].)  At the time of the jurisdiction hearing, both children were under the age of two.  Father's contention that the children were properly cared for and concerns about Sophia's failure to gain weight were promptly addressed is misleading.  It was not until the Department and court intervened that Sophia started gaining weight.  And even after the intervention, Sophia was in the 10th percentile for both weight and height.

Based on the evidence, the court properly found father's persistent and illegal use of marijuana demonstrated father had a history of substance abuse and his current use of

11

marijuana caused the children to suffer, or be at a substantial risk of suffering, serious physical harm or injury. (§ 300, subd. (b).)

*Mother's Appeal*

Mother's opening brief joins father's opening brief on appeal, but she makes no argument that the jurisdictional findings based on her conduct are not supported by substantial evidence, and justifiably so. There is substantial evidence that mother is an admitted long-term substance abuser who continued to use marijuana after the Department intervened, and her marijuana use affects her ability to care for her children. Mother initially told the Department that she stopped smoking marijuana three months into her pregnancy but later stated she used marijuana toward the end of her pregnancy, and despite her claims to have stopped, she tested positive on two occasions after Sophia's birth. Mother's use of marijuana throughout her pregnancy, causing Sophia tested positive for marijuana, confirms her "poor judgment and willingness to endanger her children's safety due to substance abuse." (See *Christopher R., supra,* 225 Cal.App.4th at pp. 1218-1219.)

Notwithstanding this abundant evidence of drug abuse, mother, joined by father, contends that the dependency court abused its discretion when ordering both parents to participate in a "full drug/alcohol treatment program with aftercare." We disagree.

Section 362, subdivision (d) states in pertinent part: "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." "'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.' [Citation.]" (*In re A.E.* (2008) 168 Cal.App.4th 1, 4.)

The same evidence that supports the court's jurisdictional finding supports its dispositional order. The court ordered both parents to participate in a "full drug/alcohol

treatment program with aftercare" along with additional programs. Mother does not challenge the other dispositional orders that are similar in kind, which includes random drug testing every other week, and a 12-step program with a sponsor. In any event, mother and father only voluntarily entered substance abuse programs after the Department's intervention. Had the Department not intervened, mother and father gave no indication would have entered into treatment. Nothing in the record points to an instance where the parents entered into a substance abuse program on their own volition. Although the court remarked at disposition that both parents were doing beautifully, it also noted that this progress resulted after the court's and the Department's involvement. Mother's contention that "[s]moking marijuana has not caused any measurable negative effects on the children's health" is incorrect. Sophia tested positive for marijuana at birth and was later diagnosed with "failure to thrive" based on the parents' inadequate care. Mother and father continued to test positive for marijuana while participating in substance abuse programs during the Department's investigation. Based on the parents' chronic history of substance abuse and continued use, the court did not abuse its discretion in requiring both parents to participate in a full alcohol/drug treatment program with aftercare.

## DISPOSITION

The judgment is affirmed.


       KRIEGLER, J.


We concur:



       MOSK, Acting P. J.



       MINK. J. *

---

* Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.