Filed 3/29/16  In re A.V. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.V., a Person Coming Under the Juvenile Court Law. | B262140 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK07731) |
| Plaintiff and Respondent, | |
| v. | |
| ALFONSO V., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Julie Blackshaw, Judge.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

————————

# INTRODUCTION

Father, Alfonso V., appeals from the orders of the juvenile court taking jurisdiction over his nine-year-old son Angelo and ordering father into a substance abuse program. (Welf. & Inst. Code, §§ 300, subd. (b) & 362, subd. (c).)[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Department of Children and Family Services (the Department) filed a petition in early October 2014, alleging in relevant part, "b-2 [¶] On 10/2/14 and on prior occasions, the child Angelo V[.]'s father, Alfonso V[.] Sr. established a detrimental and endangering home environment for the child in that the father possessed marijuana and drug paraphernalia in the child's home, within access of the child," which conduct endangers the child's physical health and safety and places the child at risk of physical harm, damage, and danger.

The record shows that Angelo lived with father under a family law order granting him sole physical custody. Angelo has had limited contact with his mother.[2] Father has an extensive history of referrals to the Department involving drug use, violence in the home, emotional abuse, and general neglect of Angelo. Father also has a criminal history that includes arrests for possession of controlled substances in 2002, driving under the influence in 2007, vandalism in 2011, and for driving on a suspended license or without a license in 2005 and 2010.

In August 2014, the Department received an anonymous referral alleging that father was emotionally abusing and neglecting Angelo. The caller alleged that father was verbally abusive toward Angelo and smoked marijuana daily at home, causing his apartment and the one upstairs to have a strong odor of the drug. Father was heard screaming at the child who was heard crying.

Father allowed the investigating social worker to enter his one-room apartment, where she observed burnt residue on the table from either incense or marijuana. Father

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Mother, Miriam Q., is not a party to this appeal.

admitted he cursed.  He admitted that he has been smoking marijuana since the age of 14 and that currently he smoked "potent marijuana" under a prescription for nerve pain from a gunshot wound in the leg.  Although he smoked two to three joints a day, he denied smoking around the child.  He smoked when Angelo was sleeping or at school.

Father's neighbor, Amparo G., who lived with her family on the second floor, reported that father used marijuana and yelled at Angelo.  The odor of marijuana traveled into her home and affected her husband who has asthma.  Mrs. G.'s daughter "smells weed" from the top of the building all the way to the back.  The daughter confirmed that father cursed at Angelo.  She heard the child running back and forth crying loudly.  The landlord went into father's apartment and photographed a marijuana pipe.

In a later visit, father would not allow the social worker to enter his apartment.  Nonetheless, the social worker could see through the window into father's room and observed marijuana lying on a table.  Father explained that he had just put it on the table because Angelo was at school.  He insisted he knows not to keep the drug around his son.

Angelo's teacher already had concerns about the child's behavior after only seven days into the school year.  Angelo was not working at grade level, was tardy every day, had difficulty following directions, did not take his homework with him or complete it, and recently hit another student in the face.  The school reported that Angelo had been in trouble every day the previous year because he refused to follow school rules.  Father did not attend a meeting called by the school.

Angelo did not explain why he was always late for school.  He did not know what drugs were.  He knew father blew air through " 'thingies' " out the bathroom window and then threw them into the toilet.

Father had agreed in August 2014 to submit to drug tests but failed to appear for scheduled testing.  He explained in October 2014 that he had gone to test but did not have the correct documents.  Since then, he had broken his ankle and had not been able to move or work.  Hence, he tested positive for marijuana and alcohol once in October 2014, and failed to test once in October and once in November 2014.  Despite his claims

to have a medical marijuana card, father never produced it. Father enrolled in drug counseling at Home Boy Industries in October 2014.

Mother told the Department that father used marijuana every day and was hospitalized in 2007 for an overdose of methamphetamine and cocaine. Father had not transported Angelo to visit mother since 2013.

A person who did not want to give her name reported that father argued with everyone in the neighborhood and his apartment always smelled of marijuana. Father broke both the metal bars and the door to his apartment.

Father disappeared in late fall 2014. He finally contacted the Department in December 2014 to report he had moved. The new place was a single room where he and Angelo shared a bed. They had no refrigerator, stove, or hot water. They used a portable hot plate or father brought food home from the restaurant where he worked.

The juvenile court ordered the Department to make unannounced visits. Father agreed to comply with court orders and to drug test. He claimed he had stopped smoking marijuana. However, father tested positive for cannabinoids five days later on December 15, 2014 and failed to appear for scheduled drug tests four times in December 2014 and once in mid January 2015.

The Department expressed concern that father did not keep his scheduled visits with the social worker. The staff at Angelo's after-school program reported that on several occasions, the child was picked up an hour late and father was not reachable in case of emergency.

In January 2015, the dependency investigator found a bottle of whiskey by the stairs in front of father's apartment. Father said the bottle belonged to the neighbor. However, no one resided next door to father. Another tenant reported that on January 28, 2015, father and friends were drinking alcohol. There were loud sounds coming from father's apartment of people fighting and children crying. Everyone left before the neighbor called the police. Father produced a positive drug test result in early January but a negative result in late January 2015.

4

The social worker visited Angelo at school in January 2015. The eight year old did not know what day it was and was unable to explain what days he does not go to school. He did not know father's address or telephone number. As the result of his "behavior," Angelo had changed teachers. Asked about Angelo's behavior and academic issues, father replied only that his son was smart and that he was teaching the child his culture.

In February 2015, the Department reported that father denied having any criminal history and claimed the last time he smoked marijuana was in January 2015. He denied smoking marijuana currently or leaving drug paraphernalia around Angelo. Shown the former landlord's photograph of the " 'weed pipe,' " father explained that he smoked while Angelo was asleep or at school. Father had friends with marijuana dispensaries who would give him marijuana. Father provided no explanation for missing appointments with the Department.

At the jurisdiction hearing, the juvenile court dismissed the petition's count b-1 on the ground that the court found no nexus between father's use of large quantities of marijuana and a risk to the child. Turning to count b-2, the court did not believe father's claim that he puts the drugs and paraphernalia away when the child is home. The court was "worried about the child being in a home with so much drug use and access to drugs," noting that the landlord's photograph depicted drugs "right next to the Frosty O's" cereal, which food the court was sure the child regularly ate. The court found that father created an "extremely unsafe and detrimental situation [that] poses a risk to the child," sustained the b-2 count, and declared Angelo a dependent.

As for the disposition, the juvenile court ordered that Angelo be placed with his father under the Department's supervision. Father objected to the Department's recommendation that he undergo a full substance abuse program with drug testing on the ground the court found he was not a "substance abuser." The court replied emphatically that it did not find father was *not* a substance abuser. The only reason the court did not sustain the first count was that it found no nexus between father's substance abuse and harm to the child. The court indicated its willingness to consider modifying the

disposition order if father produced a physician's prescription requiring him to use marijuana medicinally. Otherwise, the court ordered father to complete a drug program but directed the Department to look into allowing father to test through Homeboy Industries rather than at the Department's offices. Father's appeal ensued.

## CONTENTIONS

Father's assignments of error are: (1) the jurisdiction order was not supported by substantial evidence; and (2) the disposition order to complete a substance abuse program was an abuse of discretion.

## DISCUSSION

1. *The jurisdiction order is supported by the evidence*.

Father contends there is insufficient evidence to support the petition's allegations because the record contains no direct link between father's marijuana use and harm to the child.[3] He argues he did not create a dangerous home environment for Angelo.

At the jurisdiction hearing, the juvenile court determines whether, based on a preponderance of the evidence, the allegations in the petition that the child comes within section 300 are true. If so, the child falls within the court's jurisdiction. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1432, citing § 355.) A child falls within the jurisdiction of the juvenile court under section 300, subdivision (b)(1) if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."

We review the juvenile court's finding for substantial evidence. (*In re J.K.*, *supra*, 174 Cal.App.4th at p. 1433.) "In a challenge to the sufficiency of the evidence to support a jurisdictional finding, the issue is whether there is evidence, *contradicted or uncontradicted*, to support the finding. In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order, resolving conflicts

---

[3] Father's contention that he is not a substance abuser is irrelevant in view of the fact the juvenile court dismissed count b-1 that alleged he was a substance abuser.

6

in the evidence in favor of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court. Evidence from a single witness, even a party, can be sufficient to support the trial court's findings. [Citations.]" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450-451, italics added; *In re Christopher R*. (2014) 225 Cal.App.4th 1210, 1216.) The substantial evidence standard " 'simply requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence . . . ." ' " (*In re Angelia P*. (1981) 28 Cal.3d 908, 918.)

Viewed according to this standard, the record contains ample evidence to support the juvenile court's jurisdictional finding under subdivision (b) of section 300. The record shows that father is such a heavy abuser of marijuana that his smoke permeated the entire building in which he resided. The juvenile court did not believe father when he insisted he did not smoke around his son. Moreover, father's contention is belied by his admission he smokes when Angelo is asleep in their one-room apartment and by the fact that Angelo has seen his father smoke. The secondhand smoke that traveled to the back of the building necessarily placed the child in the same room as the smoker at risk of harm. (*In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 452 [while mere use of marijuana by a parent will not support a finding of risk to minors, negative effects of secondhand marijuana smoke is a non-speculative risk].) The court disbelieved father's claim he never left the drug within reach of Angelo, citing the photograph of the drug in the open, on the table next to Angelo's food, where the child could have access to it, with nothing to prevent him from succumbing to the temptation to ingest it. (*In re Rocco M*. (1991) 1 Cal.App.4th 814, 825 [establishing as a legal premise that a child's ingestion of illegal drugs constitutes serious physical harm for purposes of § 300].) In addition to exposing Angelo to secondhand marijuana smoke and leaving drugs available to the child, father yells and swears at Angelo, allows him to be late for school, ignores the child's behavior problems and lack of progress in school, and allows Angelo to witness father smoking. Father's additional contention that there is no evidence his conduct currently poses a

7

danger to the child is unsupported by the record. Father's failure to regularly test clean is evidence he is still using. The purpose of the dependency statutes is to provide maximum safety and protection for children who are currently being neglected and to ensure the safety, protection, and well-being of those children at risk of such harm. (§ 300.2.) On this record, there is ample evidence that father created a substantial risk by exposing Angelo to drugs and drug paraphernalia in the child's home where he could get access to it, and exposing Angelo to danger from secondhand marijuana smoke.

2. *Disposition*

Father contends that the trial court abused its discretion by ordering him to complete a substance abuse program, given the absence of evidence he is a substance abuser as that term was defined by this court in *In re Drake M*. (2012) 211 Cal.App.4th 754, 766.

" ' "The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." [Citation.]' [Citation.]" (*In re Daniel B*. (2014) 231 Cal.App.4th 663, 673.) A juvenile court abuses its discretion when it makes " ' "an arbitrary, capricious, or patently absurd determination" ' " or " ' exceed[s] the bounds of reason.' " (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319.)

Section 362 applies when a child is adjudged a dependent and remains in his or her parent's custody under the Department's supervision. (*Id*., subd. (c).) Under section 362, the parent must participate in services. (*Ibid.*) The juvenile court "may direct any reasonable orders to the parents . . . of the child who is the subject of any [dependency] proceedings . . . as the court deems necessary and proper to carry out this section," including orders "to participate in a counseling or education program." (*Id*., subd. (d).) "The case plan ordered by the court should be appropriate for each individual family based on facts relevant to that family, and should be designed to eliminate the conditions that led to the dependency in the first instance. [Citations.]" (*In re Daniel B*., *supra*, 231 Cal.App.4th at p. 673, citing § 362, subd. (d).)

This case is similar to *In re Alexis E.*, *supra*, 171 Cal.App.4th 438, father's contention to the contrary notwithstanding. There, the father's medical marijuana use put the children at risk of harm from secondhand smoke. (*Id*. at pp. 451-452.) We held that the juvenile court properly ordered drug counseling and testing under section 362, subdivision (c). Given the record here, and our opinion in *Alexis E*., we do not find that the court " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination' [citation]" (*In re Alexis E.,* at p. 454), particularly given father already voluntarily enrolled in the program at Homeboy Industries. Moreover, the record shows using marijuana while the child is present in the apartment and leaving the paraphernalia within Angelo's reach, coupled with father's failure to assure the child attend school regularly and behave, and do his school work, presents a threat to Angelo's physical and emotional health and safety. Therefore, a substance abuse program is appropriate.

**DISPOSITION**

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

JONES, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.