Filed 9/1/16  In re Hayden I. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re HAYDEN I., a Person Coming Under the Juvenile Court Law. | B268178 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ASHLEY G. et al.,<br><br>Defendants and Appellants. | (Los Angeles County Super. Ct. No. DK12620) |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Stephen Marpet, Referee.  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant Ashley G.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant Eduardo I.

Mary C. Wickman, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Timothy M. O'Crowley, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Eduardo I. (father) and Ashley G. (mother) appeal jurisdictional findings in the dependency case of their then- 11-month-old son, Hayden I. Father also appeals a disposition order removing Hayden from father's physical custody and placing the child with mother in the maternal grandmother's home with visitation by father. Parents contend the evidence was insufficient to support the finding that their use of marijuana while caring for Hayden placed the child at risk of serious physical harm. Father also contends the evidence was insufficient to find no other reasonable means existed to protect Hayden short of removing him from father's custody. We conclude the dependency court's rulings were supported by the evidence. We affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

Hayden was born in August 2014 and was 11 months old when the family came to the attention of the Los Angeles Department of Children and Family Services (the Department). Mother was 24 years old at the time; father was 21.

On July 23, 2015, police officers executed a search warrant at the family's home in connection with a burglary investigation implicating father. During the search, police officers discovered psilocybin (psychedelic) mushroom cultivations, hash (marijuana) oil, and a drug pipe in the home. The mushroom cultivations were located in several mason jars in the kitchen and the top shelf of a bedroom closet. The hash oil and pipe were on the dining room table. Due to Hayden's presence in the home, the officers referred the matter to the Department to conduct a separate child abuse investigation.

A Department social worker interviewed mother later that day at the family home. Mother reported that father was responsible for cultivating the mushrooms in the home, but admitted she was aware of it. She said father had consumed some of the mushrooms to "test" them, and denied using them herself. She admitted that both parents used marijuana. She also acknowledged using heroin in the past, but reported she had been

---

[1]     Because resolution of this appeal turns upon the existence of substantial evidence supporting the dependency court's findings, we state the facts in the light most favorable to the court's rulings. (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.)

"clean" for the last four years.  She indicated father cared for Hayden during the day while she worked.  Mother denied any history of domestic violence.

The social worker interviewed father at the local police station.  Like mother, father admitted the parents used marijuana in the home.  He would not say whether he "tested" the mushrooms as mother reported.  Father expressed concern for Hayden's wellbeing, accepted that he would " 'suffer all the consequences for what [he had] done,' " and asked that, if necessary, the child be placed with the maternal grandmother.

Based on the investigation, the Department detained Hayden, and filed a petition for juvenile dependency alleging the following three grounds for jurisdiction pursuant to Welfare and Institutions Code[2] section 300, subdivision (b):  (1) parents created a "detrimental and endangering home environment for the child" by allowing psychedelic mushroom cultivation, hash oil and a drug pipe to be "within access of the child"; (2) mother failed to provide "regular care and supervision of the child" by caring for Hayden while under the influence of marijuana; and (3) father failed to provide regular care and supervision by caring for Hayden while under the influence of marijuana.  The dependency court found the Department presented a prima facie case for detention and ordered Hayden detained pending a full hearing on jurisdiction and disposition.  The Department placed Hayden in the maternal grandmother's home, with monitored visits by the parents as ordered by the court.

In advance of the hearing, the Department interviewed parents again regarding the dependency petition's allegations.  Mother acknowledged she and father kept psychedelic mushrooms, hash oil and drug paraphernalia in the residence with Hayden, and admitted she had been aware of father cultivating the mushrooms since March 2015.  She maintained that they had been careful about keeping the items out of Hayden's reach, stressing that the family had installed " 'reinforced gates' " to block Hayden's entry into the kitchen and bedroom where police found the drugs.

---

[2]     Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

As for her own use of marijuana, mother reported that she had been prescribed the drug to relieve pain associated with fibromyalgia after other prescription drugs showed signs of damaging her kidneys. She said she used marijuana at nighttime while Hayden was asleep, and the frequency of her use varied depending on how often she felt pain. She said she used marijuana "socially" when she was 15 years old and only started using it again in May 2015 after receiving the prescription. During the interview, mother produced a medical marijuana card with an issuance date of April 2015.

As for father's drug use, mother indicated that father had been using marijuana since before they met, but she did not know how long he had been using it or how frequently. She admitted using marijuana with father on at least two occasions, but said Hayden was asleep at the time. When asked whether father had used marijuana while caring for Hayden alone, mother reported she did not know because she would have been at work.

Father likewise maintained that the drugs and paraphernalia were kept outside of Hayden's reach. With regard to the psychedelic mushrooms, father said he began cultivating them in June 2015 as a means to provide for his family in advance of quitting his job at a restaurant where he anticipated staff layoffs. He knew cultivating mushrooms was illegal at the time.

Contrary to mother's assertion that she only recently began using marijuana to manage a medical condition, father reported that she had been using the drug since they met three and one-half years earlier. He also reported that mother used marijuana every day after work, including while Hayden was awake, but always in a separate room. He said parents tried to use marijuana at different times so one could be sober while caring for Hayden, but admitted there " 'may have been times' " when both used the drug while caring for the infant. As for his personal use, father admitted he used marijuana on an almost daily basis and that he did not have a medical prescription. He also admitted using the drug while mother was at work, but said Hayden was always asleep at the time.

Based on the interviews and its investigation, the Department filed a report recommending that Hayden be declared a dependent of the court and that he remain in

the care of the maternal grandmother while parents received reunification services and substance abuse counseling. Among other things, the Department emphasized that parents had given inconsistent statements about the history and frequency of their drug use, which suggested they may have been under the influence of marijuana while caring for Hayden more frequently than they admitted. Both parents tested positive for marijuana in drug screenings taken more than a month after Hayden's detention. A later screening for father, taken at the end of September 2015, was negative for marijuana and all other substances tested. As part of the reunification plan, the Department requested that parents continue to submit to weekly drug screenings.

On October 8, 2015, the dependency court held a combined jurisdiction and disposition hearing. The court received the Department's reports into evidence without objection, and no other evidence was offered by any party. Hayden's counsel joined the Department in arguing the court should sustain the petition for jurisdiction and maintain the infant in the maternal grandmother's care. Parents opposed, arguing the presence of drugs in the home and their use of marijuana alone were insufficient to establish a risk of harm to the child. The Department countered, stressing again that parents' use of marijuana while caring for an 11-month-old infant did present a significant risk.

The court sustained the jurisdictional allegations and declared Hayden a dependent. While acknowledging there was nothing in the reports to indicate Hayden was neglected, the court agreed with the Department that the infant's young age demanded greater caution, observing, "We're talking about a baby and the younger the child is the bigger the risk when these parents are involved in drug activity."

As for disposition, the court found Hayden could be protected without removing him from mother's custody, so long as certain protections were in place. Accordingly, the court ordered Hayden to be removed from father's custody and placed with mother, on two conditions: first, that mother reside with the maternal grandmother; and, second, that mother continue to drug test through the Department and that her levels for marijuana remain relatively stable. Father received generous monitored visitation.

## DISCUSSION

1.     *The Jurisdictional Finding Is Supported by Substantial Evidence*

Both father and mother contend the evidence was insufficient to authorize jurisdiction under section 300, subdivision (b), notwithstanding their daily use of marijuana. Though parents concede they both used marijuana while supervising Hayden, they argue this did not warrant jurisdiction because their use of the drug had yet to have any "tangible effects" on their ability to care for the infant. We disagree.[3]

"The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.) Thus, section 300, subdivision (b), creates juvenile court jurisdiction where it is shown that a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse." The exercise of dependency jurisdiction under section 300, subdivision (b) is particularly appropriate when children are "of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 (*Rocco M.*); see also *In re Christopher R.*

---

[3]     Parents also challenge the court's finding that Hayden might "tilt something over" causing the mushrooms to fall to the floor where "he could eat [them]." They argue this finding is contrary to mother's undisputed statements that the family maintained reinforced gates blocking Hayden's unsupervised access to the kitchen and bedrooms where the mushrooms were kept. Because we conclude the evidence regarding parents' use of marijuana while caring for Hayden was sufficient to sustain jurisdiction under section 300, subdivision (b), we need not address whether jurisdiction also would have been appropriate on this alternative ground. (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 (*Alexis E.*) ["When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence."].)

6

(2014) 225 Cal.App.4th 1210, 1219 (*Christopher R.*) [when a child is of tender years—i.e., six years old or younger—" 'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm' "]; *In re Drake M*. (2012) 211 Cal.App.4th 754, 767 (*Drake*).)

"In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193.)

At the heart of father's and mother's opposition to the jurisdictional finding is the premise that a parent's use of marijuana *alone* does not justify the dependency court's exercise of jurisdiction over his or her child. (See, e.g., *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 ["[i]t is undisputed that a parent's use of marijuana '*without more*,' does not bring a minor within the jurisdiction of the dependency court"]; *Alexis E., supra,* 171 Cal.App.4th at p. 453 [use of medical marijuana, without more, cannot support a jurisdiction finding].) From this premise, parents argue the evidence was insufficient to support jurisdiction because the Department's investigation revealed no immediate signs of neglect attributable to parents' drug use. While the premise is correct, parents' reliance upon it is misplaced. Here, the evidence showed parents did not merely use marijuana, but rather used the drug at times when they were the only caretakers available to respond to Hayden's needs. Parents' argument that no harm has yet occurred ignores the risk inherent in trying to supervise an infant while under the influence of a mind altering drug.

We begin with parents' contention that parental drug use must first produce harmful "tangible effects" before jurisdiction is authorized by section 300, subdivision (b). Though the absence of existing signs of neglect is relevant to the jurisdictional inquiry, it is not dispositive. "[T]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*Christopher R., supra,* 225 Cal.App.4th at p. 1216.) As the *In re Eric B.* court explained, the contention that detrimental consequences must occur before the court may intervene is untenable because it would "logically exclude legitimacy to state action which is intended to *prevent harm. . . .* The State, having substantial interests in preventing the consequences caused by a perceived danger is not helpless to act until that danger has matured into certainty. *Reasonable apprehension* stands as an accepted basis for the exercise of state power." (*In re Eric B.* (1987) 189 Cal.App.3d 996, 1003, italics added.) Consistent with this principle, section 300, subdivision (b) authorizes jurisdiction when a "child has suffered, *or there is a substantial risk* that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child." (Italics added.) Fortunately, there is no evidence that Hayden has suffered actual harm. But this fact alone does not conclusively negate the inference that parents' ongoing drug use would pose a substantial risk of harm to their very young child should it continue unabated. Indeed, in this case there was evidence to support that inference.

Mother and father both admitted using marijuana when they were the only caretakers present to address their infant son's needs. Mother maintained this happened on only two occasions, and each time Hayden was asleep. Father likewise admitted there "may have been times" when both used the drug while caring for Hayden, though he offered no qualification that Hayden was sleeping at those times. He did state Hayden was usually asleep when he used marijuana alone while mother was at work. Father also reported, contrary to mother's statements, that both parents used marijuana on a daily basis, mother often used it after work while Hayden was still awake, and mother had been

8

using marijuana consistently since they met, including before she obtained a medical prescription for the drug.[4]

As we have emphasized, due to Hayden's very young age, parents' daily use of marijuana poses an acute risk to the child. Indeed, given the evidence that both parents were at times intoxicated with the drug when they were the only adults present to care for the infant, the dependency court could reasonably find that parents were drug *abusers* and that their drug abuse constituted " 'prima facie evidence' of their 'inability . . . to provide regular care resulting in a substantial risk of harm.' " (*Christopher R., supra,* 225 Cal.App.4th at p. 1219; cf. *Drake M., supra,* 211 Cal.App.4th at p. 767 [drug abuse finding was unsupported where the Department failed to produce evidence showing father was ever under the influence of marijuana while caring for 14-month-old child].) Parents' contention that Hayden was usually asleep when they both used the drug does not negate the substance abuse finding nor preclude the inference that their drug abuse posed a substantial risk. As any parent is all too aware, infants regularly wake up at inopportune times and their needs do not always adhere to a predictable sleep schedule. In view of Hayden's "tender years" the potential "absence of adequate supervision and care" that might result from parents' daily marijuana use posed "an inherent risk to [his] physical health and safety." (*Rocco M., supra,* 1 Cal.App.4th at p. 824; see *Christopher R.,* at pp. 1219-1220 [father's regular use of marijuana supported inference that he would be unable to provide regular care to his three-month-old daughter].) The dependency court reasonably concluded intervention was warranted to ameliorate this risk and ensure that it was ultimately abated through drug counseling and other services for parents. We find no error in the court assuming jurisdiction.

---

[4]     This evidence undermines mother's implicit contention that her marijuana use while caring for Hayden was so infrequent that it could not have posed a substantial risk to the child. In view of father's contrary account of mother's history of drug use, the dependency court could reasonably infer that mother's use while caring for Hayden was much more frequent than she had admitted. (See *Christopher R., supra,* 225 Cal.App.4th at p. 1217 [given the mother's "initial false denial of any cocaine use . . . , the juvenile court reasonably disbelieved [the mother's] portrayal of limited, sporadic drug use"].)

## 2. *The Disposition Order Was a Reasonable Exercise of Discretion*

We turn now to father's challenge to the disposition order. The order removed Hayden from father's physical custody and placed the child with mother on the conditions that mother continue to reside with the maternal grandmother and maintain stable levels of marijuana in her weekly drug tests. We conclude the order constitutes a reasonable exercise of discretion by the dependency court.

Section 361, subdivision (c) states, "A dependent child shall not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of . . . . [¶] [(1)] a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." In making the determination regarding removal, the statute directs the court to "consider, as a reasonable means to protect the minor, each of the following: [¶] (A) The option of removing an offending parent or guardian from the home. [¶] (B) Allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (*Id.,* subd. (c)(1).)

"The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." (*In re Baby Boy H*. (1998) 63 Cal.App.4th 470, 474.) In reviewing an order for abuse of discretion, we " 'must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling. [Citation.] The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child. . . .' [Citation.] The trial court is accorded wide discretion and its determination will not be disturbed on appeal absent 'a manifest showing of abuse.' [Citation.]" (*In re Robert L*. (1993) 21 Cal.App.4th 1057, 1067.)

10

Father concedes that the evidence supporting jurisdiction, if deemed sufficient for that purpose, would also support a substantial danger finding under section 361, subdivision (c)(1). Nevertheless, he argues the disposition order should be reversed because the dependency court "failed to consider less drastic measures than removal from [his] custody."

Contrary to father's assertion, the face of the disposition order demonstrates the court considered reasonable alternative measures as directed by the statute.[5] As discussed, section 361, subdivision (c)(1) directs the dependency court to consider "as a reasonable means to protect the minor," *inter alia*, "[t]he option of removing an offending parent or guardian from the home" or "[a]llowing a nonoffending parent . . . to retain physical custody as long as that parent . . . presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (§ 361, subds. (c)(1)(A) & (c)(1)(B).) Here, the disposition order shows the dependency court not only considered these alternatives, but employed them in fashioning an order that allowed Hayden to remain in mother's physical custody, at the maternal grandmother's home, with generous visitation by father and safeguards in place to ensure Hayden's protection from future harm. Father has failed to demonstrate the dependency court abused its discretion.

---

[5] The order also contains the finding that "reasonable efforts [were] made to prevent or eliminate the need for removal of the minor" from father's custody. That finding is supported by the court's order placing Hayden in mother's custody at the maternal grandmother's home, evidence of father's drug use while caring for Hayden, a drug test indicating father used marijuana more than a month after Hayden's detention, and father's cultivation of psychedelic mushrooms in the home.

11

## DISPOSITION

The dependency judgment and disposition order are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, J.[*]

We concur:

EDMON, P. J.

LAVIN, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.