Filed 10/9/20  In re April V. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re APRIL V., a Person Coming Under the Juvenile Court Law. | B302749 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>J.V.,<br><br>　　　Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP04546A) |

　　　APPEAL from findings and orders of the Superior Court of Los Angeles County.  Marguerite D. Downing, Judge.  Affirmed.

　　　Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Father Jaime W. appeals the juvenile court's jurisdictional findings and disposition order removing his young daughter April V. from his custody due to domestic violence. We affirm.

**BACKGROUND**

The dependency petition at issue was based on a 2019 domestic violence incident between father and mother A.B. while April was present in the home. (Welf. & Inst. Code, § 300, subds. (a)(1), (b)(1); all statutory citations refer to the Welfare and Institutions Code.) The sustained petition alleged father "grabbed the mother's neck and pushed the mother to the ground," then "repeatedly struck" her with his fist and "repeatedly kicked mother's face, body and legs inflicting pain to the mother's head and stomach." Mother "bit the father's chin, inflicting pain, redness and a laceration to the father's chin," and "pulled and scratched the father's earlobe . . . inflicting pain and redness to the father's earlobe." Mother was arrested for the incident. The petition alleged the parents had a history of domestic violence and mother failed to protect April because she allowed father to reside with April and have unlimited access to her in violation of a juvenile court order granting father only monitored visitation.

The petition was later amended to add a sustained allegation that mother placed April at risk by failing to live with maternal grandmother in violation of court orders to do so.

According to the police report of the fight, father told police the dispute arose because he told mother he was going out and she said she was also going out. Father told her not to leave or he would put her belongings outside. When mother still tried to leave, father told her he wanted to break up with her and started

2

placing her belongings outside. Upset, mother warned him to stop or "he would regret it."

Outside the home, father started his car and went back inside, but mother turned off the car and took his keys. Back inside their bedroom, father told mother he was going to throw away her personal items. As he tried to do so, mother bit him once on his chin and grabbed his earlobe. Father said both April and the paternal grandmother were in the room, although only the paternal grandmother saw the incident. Father screamed for mother to stop, and he pretended to call 9-1-1 so mother would calm down. Mother went outside and actually called 9-1-1. Father overheard her tell the dispatcher he choked and kicked her, which he denied. The police officer observed visible injuries on father's chin and earlobe.

Mother described the incident to police in a similar way, but she told police that when she blocked the door to prevent father from placing her personal items outside, he grabbed her by the neck, pushed her down, and hit her several times with his fist. He also kicked her several times in her body and face. She then called 9-1-1. The police officer observed no injuries to her, although she complained of pain to her head and stomach. She claimed April was not in the room and claimed she did not hit or touch father.

Paternal grandmother told police she saw mother bite father and pull his right ear. She did not see any previous altercation described by mother.

Paternal grandfather reported he did not see or hear anything.

The police arrested mother based on father's visible injuries and statements from him and paternal grandmother.

3

When later interviewed by a social worker, mother and father described the incident in mostly the same way. Father denied having hit or kicked mother. He said he overheard her tell police he choked and beat her, and he claimed "mother ended up telling the police that she lied." He said April was first with the paternal grandfather then an adult roommate during the fight.

According to mother, father "went crazy" and "started throwing her belongings outside the house." He "pulled her" when she tried to put her things back inside. She "thought father was going to head butt her and she pushed him back and scratched him." She did not say whether he hit, kicked, or choked her. In a later interview, mother said "I know I did add a lot to what really happened and what he did to me. He did grab me from my arms and pushed me on the ground and kicked me on the legs."

Paternal grandmother told the social worker the same details she gave police. She did not mention that father had kicked, hit, or choked mother. She said April was with an adult roommate during the altercation. She said she told father she didn't want mother in the house anymore, saying she "does not like mother because mother is jealous and had father fired from a previous job." She had seen the parents argue but had not seen them "get physical."

April told the social worker she was not in the bedroom during the fight, but she "heard" it.

This was not the first physically violent altercation between the parents. In 2015, a juvenile petition was sustained after father violently attacked mother in front of April. It was reported father "initially forced his way into a locked bedroom

4

using a butcher's knife to open the door and ultimately injuring mother's arm with the knife. He threw her down some steps which possibly led to the death of the fetus that mother was impregnated with and father displayed a gun before fleeing the home." Mother also had reported prior domestic violence incidents to family and the social worker, yet she continued to return to father with April. Father had also abused marijuana and "possibly other substances," and was under the influence while caring for April. The juvenile court terminated jurisdiction with a family law order granting sole physical custody to mother and monitored visitation to father.

The court sustained the allegations in the current petition and exercised jurisdiction under section 300, subdivision (a) ["child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian"], and subdivision (b)(1) ["[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child"]).

For disposition, the court ordered April removed from both parents' custody and found she would be placed in substantial danger if returned home. The court refused to release her to either parent because they did not follow prior court orders, including the standing custody order.

**DISCUSSION**

*Jurisdiction*

The jurisdictional findings in this case were based on both mother's and father's conduct. Because mother has not appealed, we may affirm without addressing father's contentions. (See

5

*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Nonetheless, we exercise our discretion to review the merits both because a favorable decision may make father a non-offending parent and because the finding forms the basis for the disposition order he challenges on appeal. (*In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316–1317; *In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763.)

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438.) We find substantial evidence supported the court's exercise of jurisdiction here.

There is no dispute exposing a child to domestic violence can support jurisdiction under both subdivisions (a) and (b)(1) of section 300. (*In re T.V.* (2013) 217 Cal.App.4th 126, 134 [subd. (b)(1)]; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599–601 [subd. (a)].) Father's position on appeal is that insufficient evidence showed he engaged in any domestic violence that posed a risk to April. The juvenile court reasonably concluded otherwise.

In light of the varying accounts of the fight between the parents, the juvenile court could have credited mother's statement to police that father hit, choked, and kicked her. Her statement was at least partially consistent with her later statement to the social worker that he did in fact grab her arms, push her down, and kick her. It was also consistent with father going "crazy" and throwing mother's belongings outside, which is itself an aggressive and hostile act. The court could have discounted the fact that police arrested mother and not father because the police report noted the arrest was based on father's visible injuries, as well as father's and paternal grandmother's

6

accounts of the incident.[1]  The court could have rejected paternal grandmother's account of the incident since she admitted she did not like mother and did not want mother in the house anymore. Those were credibility assessments we cannot disturb on appeal. (*In re T.V., supra,* 217 Cal.App.4th at p. 133.)

The juvenile court's finding is further supported by the parents' 2015 sustained petition for domestic violence, which demonstrated an ongoing cycle of violence.  (See *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215 ["A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' "].)  Father's conduct during that prior incident was shockingly violent—he used a knife and cut mother; he pushed her down the stairs, possibly causing her to lose her unborn baby; and he brandished a gun. He did this all in April's presence.  The incident understandably resulted in the juvenile court limiting him to only monitored visitation with April.  From this history, the juvenile court could have readily rejected father's attempt to minimize his role in the current fight and shift blame to mother for attacking him.

The court could have further concluded that April was either in the room or nearby when the violence occurred, exposing her to serious risk of harm.  Everyone agreed April was in the house at the time.  Father told police she was in the same room, and the juvenile court could have credited that statement.  Even if she wasn't in the same room, April herself told the social worker she "heard" the altercation.  Father threw mother's belongings outside, suggesting the parents may have been

---

[1]	Father contends mother "later admitted that she lied and he did not hit her."  He cites only the police report, which noted mother denied *she* hit *him*, not the other way around.

7

moving through the house during the fight. That created a significant risk of the physical violence spilling over into other parts of the home and catching April in the crossfire. Even more so, the parents knew April was present, and yet they still physically assaulted one another, deliberately exposing April to the risk of harm.

Notwithstanding father's argument, April's exposure to the incident was sufficient to demonstrate she was at serious risk of harm under *both* subdivisions (a) and (b)(1) of section 300. "[T]he cycle of violence between the parents constituted a failure to protect [April] 'from the substantial risk of encountering the violence and suffering serious physical harm or illness from it,' " as required by section 300, subdivision (b)(1). (*In re T.V., supra,* 217 Cal.App.4th at p. 135; see *id.* at p. 134 [physical violence between parents was ongoing and likely to continue, posing risk to child; child was aware of incidents but not present].) Likewise, April's exposure to the parents' repeated domestic violence placed her "at substantial risk of suffering[] serious physical harm inflicted nonaccidentally by" father, as required by section 300, subdivision (a). (*In re Giovanni F., supra,* 184 Cal.App.4th at pp. 598–599; see *In re M.M.* (2015) 240 Cal.App.4th 703, 720–721.)

April was also at risk of *future* harm, despite father's contrary view. As noted, this record shows the parents are caught in a cycle of domestic violence. Notwithstanding the seriousness of father's 2015 attack, they reconciled, leading to the most recent altercation. After the current fight, they apparently reconciled again, given the juvenile court found mother and April were residing with father in violation of the standing custody

8

order.[2]  Father told the social worker he and mother "always had an on and off relationship."  The juvenile court could have readily concluded the violence between them would continue, putting April at risk of future harm.  (See *In re T.V., supra,* 217 Cal.App.4th at p. 135 [history of violence supported reasonable inference violence was likely to continue].)

*Disposition*

Father also challenges the juvenile court's removal of April from him.  Removal is proper if the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  (§ 361, subd. (c)(1).)

We review the disposition order for substantial evidence, keeping in mind the trial court had to find clear and convincing evidence supporting removal.  (*In re V.L.* (2020) 54 Cal.App.5th 147, 155.)  We must decide " 'whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' " (*Ibid.*, citing *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)

Substantial evidence showed with a high probability that removal was proper.  The pattern of violence supporting jurisdiction was prima facie evidence that April would face substantial danger if she were left in the parents' custody.

[2]     The parents' cohabitation also violated mutual restraining orders.

(See *In re T.V., supra,* 217 Cal.App.4th at p. 135 ["The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home."].)  Further, the juvenile court noted neither parent had complied with prior court orders.  Most egregiously, the court found mother and April were residing with father in violation of the standing custody order, which was designed to protect April from future violence.  The parents' decision to disregard a court order meant to protect April, coupled with the propensity of the parents to fight in April's presence, demonstrated April would be exposed to future danger in the parents' custody.  There was also an indication father was unwilling to accept responsibility for the fight with mother, was not cooperative with social workers, and was not forthcoming that mother and April were living with him.  (See *In re V.L., supra,* 54 Cal.App.5th at p. 156 ["A parent's denial of domestic violence increases the risk of it recurring."].)  The record contained sufficient evidence to demonstrate that April's removal from father was warranted.

## DISPOSITION

The jurisdiction and disposition orders are affirmed.


BIGELOW, P. J.

We concur:



GRIMES, J.          WILEY, J.


10