Filed 4/13/26  In re J.D. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| In re J.D. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B348035 (Super. Ct. Nos. J073623, J073624) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. G.T., Defendant and Appellant. | |

G.T. (Mother) appeals from the juvenile court's disposition order adjudicating twins J.D. and I.D. dependents of the court pursuant to Welfare and Institutions Code,[1] section 300,

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

subdivisions (b) and (c).  Mother contends the court's jurisdictional findings are not supported by substantial evidence. We affirm.

FACTUAL AND PROCEDURAL HISTORY

J.D. and I.D. were born in September 2017 and were six years old at the time the juvenile petition was filed.  Mother and M.D. (Father) had been engaged in a custody dispute since 2019. The prior child welfare history is lengthy.  There have been approximately 41 reports with child protection agencies in Santa Barbara, Ventura, and San Luis Obispo counties—some of which have been filed by Mother and Father alleging that the other parent abused or neglected the children.  Additionally, there have been an unknown number of reports to law enforcement agencies. Of the reports that have been investigated, all allegations have been determined to be "unfounded" or "inconclusive."

At one point Santa Barbara County Child Welfare Services (CWS) informed both parents that if they use CWS for purposes that are not legitimate, CWS would add and may substantiate an emotional abuse allegation against both parents for making false allegations and putting the children in the middle of the dispute. Thereafter, there were several reports made by third parties based on information Mother had provided to them.  Again, the reports were either evaluated out or the allegations determined to be unfounded.  In some instances, it was reported that Mother tried to lead or "coach[]" her children in their responses.  During the investigation of these reports, the children were subjected to numerous interviews, hospital visits, and physical examinations.

The most recent investigation occurred in May 2024 when Ventura County Children & Family Services received a referral alleging that Father sexually abused I.D.  I.D. underwent a child

2

forensic interview. She reported sexual abuse by Father and Father's friend, but the information was found untrue. Due to I.D.'s inability to provide accurate information, the history of unfounded reports, and law enforcement's belief that Mother was coaching the children, law enforcement did not file charges.

In 2021, Mother absconded with the children in violation of custody/visitation orders. They were located on a ranch in a remote area in Texas. Mother was arrested for a violation of Penal Code section 278.5. Father had a history of arrests and convictions, including driving under the influence. In 2022, Father was cited for a violation of Penal Code section 273a after he left the children unattended in the car at a hotel for over an hour.

The Santa Barbara County District Attorney's Office submitted an application to the family court to appoint counsel for J.D. and I.D. in the family court case pursuant to Family Code section 3150. In support of the application, District Attorney Investigator Jeffery Ellis declared that the children have been subjected to repeated interviews by law enforcement and child protection officials because both parents had made numerous accusations to these agencies. Mother and Father also invoked or attempted to invoke California's "Good Cause" statute (Pen. Code, § 278.7), claiming that the children will suffer immediate bodily injury or emotional harm if the children were surrendered to the other parent in compliance with custody/visitation orders. Both parents had subjected their children to the emergency room and urgent care visits to support their "Good Cause" claims.

The family court appointed minors' counsel. The court later ordered counsel to have temporary legal custody of the

3

twins. Counsel filed an application to CWS to commence juvenile court proceedings pursuant to section 329.

In August 2024, the twins were placed in protective custody and CWS filed a juvenile court petition. (§ 300.) The amended petition alleged that the children suffered or there was substantial risk of them suffering serious physical harm as a result of their parents' failure to supervise or protect them adequately. (§ 300, subd. (b).) The b-1 allegation cited to Mother and Father's extensive child welfare history, including 41 referrals that were unsubstantiated. The referral history demonstrated a "concerning pattern of the parents exposing their children to unnecessary interviews and examinations . . . in effort[s to] malign the other parent to gain custody of the children." The b-1 allegation further states that Mother absconded with the children out of state[2] to avoid Father and law enforcement, and that she had created a strained relationship between the children with Father.

The b-2 allegation alleged that Mother invoked the "Good Cause" statute (Pen. Code, § 278.7), which prevented Father from having his court-ordered visits with his children due to an alleged sexual abuse allegation involving I.D. The sexual abuse allegation was deemed unfounded by CWS, and law enforcement expressed concern that Mother was coaching the children.

The b-3 allegation alleged Father had a criminal history, including driving under the influence. In December 2022, Father was cited for the incident where he left his children in the car unattended for an extended period of time.

---

[2] The b-1 and c-1 allegations originally used the term "kidnapped" the children, but the court amended the language to "absconded."

The b-4 allegation alleged Mother had a criminal history consisting of an arrest for violating a custody order after Mother "abducted" the children to Texas and concealed them from Father, in violation of the custody/visitation order.

The petition also alleged that the children suffered or were at substantial risk from suffering serious emotional damage due to the conduct of their parents.  (§ 300, subd. (c).)  The c-1 allegation was similar to the b-1 allegation; it alleged the children suffered emotional trauma from Mother's "persistent and unfounded" beliefs that her children "have been victims of physical and sexual abuse by their father."

Following a contested jurisdiction hearing, the Santa Barbara County Juvenile Court sustained the b-1, b-2, b-3, and c-1 allegations and ordered the children to remain in protective custody.  It found the b-4 allegation not true.  The court subsequently transferred the matter to Ventura County Juvenile Court for the disposition hearing.  On appeal, Mother only challenges the jurisdictional findings of the Santa Barbara County Juvenile Court.

DISCUSSION

Mother contends the juvenile court "abused its discretion by sustaining the petition and taking jurisdiction."  The Agency contends that Mother's opening brief does not comply with the rules of court because it contains only conclusory assertions of error without proper citation to the record or legal argument to support her assertions.  We agree.

An appellant bears the burden of affirmatively demonstrating error.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)  "Whether legal or factual, no error warrants reversal unless the appellant can show injury from the error."  (*City of*

5

*Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.) "[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis." (*Id.* at pp. 286–287; Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).) "[W]e may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions [they] want[] us to adopt." (*Adam*, at p. 287.) Failure to provide cogent legal arguments, legal analysis, and pertinent legal authority may result with the appellate court rejecting an appellant's argument on that basis. (See *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2 ["To the extent [a party] perfunctorily asserts other claims, without development . . ., they are not properly made, and are rejected on that basis"].)

Mother's brief contains conclusory assertions of error with citation to a string of numerous record cites without further development of her argument. On that basis, we may disregard Mother's arguments. Nonetheless, we elect to reach the merits of Mother's contentions. (Cal. Rules of Court, rule 8.204(e)(2)(C).)

Mother contends there is insufficient evidence to support the juvenile court's jurisdictional findings. We review those findings for substantial evidence. Thus, we review "the record in the light most favorable to the challenged order, resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court. Evidence from a single witness, even a party, can be sufficient to support the trial court's

6

findings." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450–451 (*Alexis E.*).)

"When [as here] a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. [Citations.]" (*Alexis E., supra,* 171 Cal.App.4th at p. 451.)

Thus, "if 'jurisdictional findings have been made as to both parents but only one parent brings a challenge,' then 'the appeal may be rendered moot.' [Citation.] That is because '[d]ependency jurisdiction attaches to a child, not to his or her parent.' [Citation.] As long as there is at least one unchallenged jurisdictional finding, the reviewing court may affirm the juvenile court's finding of jurisdiction over the child, regardless of whether other findings are supported by substantial evidence." (*In re Jayden A.* (2025) 111 Cal.App.5th 1334, 1343.) Here, the b-3 allegation pertaining to Father's criminal record was admitted by Father. He submitted to jurisdiction. Thus, regardless of the jurisdictional findings as to Mother, the juvenile court's jurisdiction over J.D. and I.D. is proper because there was a substantial risk of physical harm to them stemming from Father's conduct. (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

Nonetheless, we exercise our " 'inherent discretion' " to reach the merits of Mother's contentions. (*In re D.P.* (2023) 14

7

Cal.5th 266, 282.)  Because dependency proceedings will include other stages such as disposition and reunification, reaching the merits is appropriate.

Reaching the merits here, we conclude substantial evidence supports the b-1 and c-1 allegations.  Section 300, subdivision (b)(1) provides that a child may come within the court's jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" a parent's failure or inability "to adequately supervise or protect the child."  (§ 300, subd. (b)(1)(A).)  Section 300, subdivision (c) provides that a child may come within the juvenile court's jurisdiction if that child is "suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent."

"[T]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.  [Citation.]  The court may consider past events in deciding whether a child presently needs the court's protection. [Citation.]  A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' "  (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216, disapproved on another ground by *In re N.R.* (2023) 15 Cal.5th 520, 560, fn. 18.)

Mother and Father have a well-documented child welfare history with 41 allegations of child abuse or neglect, many of which Mother and Father have alleged or caused to be alleged against each other.  During the course of investigating these allegations, the children were repeatedly subjected to interviews

8

and physical examinations by law enforcement and medical staff. None of these allegations have been substantiated.

Minors' counsel in the family law case testified that she was concerned about the repeated vaginal examinations on I.D. and the one or two examinations of J.D. as a result of the sexual abuse allegations made. Social workers also testified about their concerns with the number of times the children have been subjected to interviews. They also expressed concerns about Mother coaching the children, including coaching them to report sexual abuse by Father.

The social workers also testified regarding the trauma and unnecessary emotional distress that the interviews and examinations had on the children. One social worker testified that during a child forensic interview, J.D. began hitting himself. He also began "acting out" his emotional distress—he got into physical arguments at school and attempted to leave his resource parents' home.

A police detective, who investigated some of the physical and sexual abuse allegations, also testified that the Santa Barbara Police Department was concerned about the number of interviews I.D. and J.D. had been subjected to because the interviews were "stressful" for children. As a policy, the police department tries to limit interviews because they do not want the children to go through a "traumatic disclosure."

Additionally, CWS's reports, Investigator Ellis's declaration, and Mother's own testimony established that Mother was arrested in 2021 when she absconded to Texas with the children in violation of a custody/visitation order. In sum, substantial evidence supports that Mother and Father's conduct caused the children harm or placed them at risk of serious

physical harm or serious emotional damage. Because substantial evidence supports the juvenile court's findings on the b-1 and c-1 allegations, we need not consider the other sustained statutory grounds. (*Alexis E.*, *supra*, 171 Cal.App.4th at p. 451.)

Mother further contends that she was deprived of due process because the social worker who prepared the CWS reports was allegedly biased against her. In our view, the record does not support that Mother was deprived of due process. The issue of bias was raised and argued before the trial court. The juvenile court heard the social worker's testimony, Mother had the opportunity to cross-examine the social worker, and the court denied a motion to strike the reports and found the reports "inherently reliable." Furthermore, the issue of a social worker's bias or lack of objectivity is a factual matter for the juvenile court to weigh and decide. " 'It is the [juvenile] court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence. We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence.' " (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.)

Mother also asserts that evidence of the sexual abuse allegations in this case were not properly investigated. But Mother is essentially asking us to reweigh the evidence. Substantial evidence, including CWS's reports and the testimony of social workers and a police detective, supports that none of the sexual abuse allegations were substantiated and that such allegations were used as a way to gain custody over the children. We do not reweigh the evidence on appeal.

DISPOSITION

The dispositional order is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

11

Gilbert A. Romero, Judge

Superior Court County of Ventura

_____

Law Offices of Arthur J. LaCilento and Arthur J. LaCilento for Defendant and Appellant.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.